## EX PARTE JOHN MODE.

### No. 3705. Decided October 13, 1915.

**1.—Pool Hall Law—Constitutional Law—Local Option.**

Chapter 74 of the Acts of the Thirty-third Legislature, known as the Pool Hall Law, which provides that the voters may determine whether or not they will pass their county under the provisions of the law as enacted by the Legislature, is an option given to the voters of each county by the law enacted by the Legislature, and nothing more, and is therefore constitutional. Following Ex parte Francis, 72 Texas Crim. Rep., 304. Disapproving Ex parte Mitchell, 177 S. W. Rep., 953. Davidson, Judge, dissenting.

**2.—Same—Statutes Construed—Delegation of Legislative Power—Suspension of Laws.**

Said act of the Legislature does not contravene section 28, article 1, Constitution of Texas, providing that no power of suspending laws shall be exercised except by the Legislature, nor does it contravene said Constitution by delegating the power of the Legislature of enacting laws to the voters of the several counties. Davidson, Judge, dissenting.

**3.—Same—Legal Precedents—Constitutional Law.**

All the text-books of any note so hold, and the courts of last resort of every State in the Union (with possibly one solitary exception) so hold; that the law in question does not delegate the power and authority of the Legislature in either of these respects named, and that the law is valid. Davidson, Judge, dissenting.

**4.—Same—Rule Stated—Popular Vote—Complete Law in Itself.**

If a legislative act is complete in itself, as the one in question, and requires nothing further to give it validity as a legislative act, it is not vulnerable to attack on constitutional grounds simply because the limits of its operation are made to depend upon a vote of the people.  Davidson, Judge, dissenting.

**5.—Same—Decisions of Other States.**

See opinion giving in brief the decisions of other States upholding similar legislation.

**6.—Same—Local Option Law Not Delegation of Legislative Power.**

In every State in the Union, with the possible exception of Tennessee, the courts of final resort now hold that a local option law, a law which leaves to the voters of the county or other subdivision the question of whether or not they will avail themselves of its provisions, or pass themselves under the operation of the law, is not a delegation of the power and authority of the Legislature, either to enact a law, or to suspend a law, and the case of Wright v. Cunningham, 115 Tenn., 445, has been greatly weakened, if not overruled by the latter case of Scott v. Mailer, 124 Tenn., 388.

**7.—Same—Texas Decisions—Not Correct Rule in Certain Cases.**

The decisions in the case of Ex parte Mitchell, 177 S. W. Rep., 953, and the case of Swisher v. State, 17 Texas, 441, do not announce the correct rule, and can not be followed by this court.  Davidson. Judge, dissenting.

**8.—Same—Pool Hall Law—Rule Stated.**

The Pool Hall Law is an Act of the Legislature, and not an ordinance adopted by an inferior body, and in said Act, the Legislature lays down the rule, and contingencies under which pool halls shall be licensed or prohibited, and authorizes no addition to be made to or no provisions to be taken from the law as enacted by any agency or person or set of persons.

**9.—Same—Statutes Construed—No Conflict or Repeal.**

While it is true that section 8 of article 7355, Revised Civil Statutes, levies on every pool and billiard table, used for profit, an annual occupation tax, yet since the passage of this Act, the Legislature has enacted another law, towit, the Pool Room Law, and if there is any conflict between the two laws, this last Act of the Legislature would repeal the former, as it is the last expression of the legislative will; but we do not think either provision repeals the other, or suspends the other provision.  Davidson, Judge, dissenting.

**10.—Same—Rule Stated—In Pari Materia—Statutes Construed.**

Where two enactments separately made are read in pari materia, they are treated as having formed in the mind of the enacting body parts of a connected whole, though considered by the Legislature at separate dates, and under distinct and varied aspects of the common subject, and such statutes are taken and construed as one system, and are to be brought in harmony if possible, though they may not refer to each other, and where a statute is made in addition to another statute on the same subject, without repealing any part of the provisions of the other, both must be considered together.  Following Taylor v. Hall, 71 Texas, 213, and other cases.

**11.—Same—Pool Hall Law—Rule Stated—Constitutional Law.**

The Pool Hall Law is referred to no one to determine whether it shall become a law, but the Legislature enacted its provisions as the law of the land, and it remains the law, whether a vote is ever held under its provisions or not. It is complete in itself, and by its terms, an option is given to the voters of the various counties to determine whether or not they will pass themselves under

Vol. 77 Crim.-28

the provision of the law, and this is not a delegation of legislative power, and is not violative of any provision of the Constitution. Davidson, Judge, dissenting.

### 12.—Same—Decisions of Supreme Court of Texas—Judicial Construction.

See opinion for a review of the various decisións of the Supreme Court of Texas, which do not follow the doctrine in the case of Ex parte Mitchell, supra, and Swisher v. State, supra. Davidson, Judge, dissenting.

### 13.—Same—Rule Stated—Legislative Power—Constitutional Law.

The Federal Congress can only pass such laws as the grant of power to the Union authorizes; but a Constitution of the State is not a delegation of authority and power, and the authority and power to make laws inheres in the States, and the people thereof, except in regard to such matters as was ceded to the Federal government, and except such limitations as the people of each State have seen proper to place upon their representatives in their State Constitution, and if the people have placed no inhibition in their State Constitution, then the Legislature can act, and it is sovereignty speaking through their chosen representatives, which the courts have no right to strike down. Davidson, Judge, dissenting.

### 14.—Same—Constitutional Inhibition—Straine. Construction.

We find no provision in our Constitution which inhibits the Legislature from passing a general law under and by virtue of which the people of the various counties may avail themselves of rights and privileges granted by the law, and we can not agree by strained construction to engraft upon the Constitution such an inhibition. Davidson, Judge, dissenting.

### 15.—Same—Court of Criminal Appeals—Supreme Court—Final Jurisdiction.

The Legislature has made a violation of the law a criminal offense, and the Constitution of this State places in the Court of Criminal Appeals, and not the Supreme Court of Texas, the supreme and final jurisdiction in all criminal cases; although it is to be regretted that the two courts of final resort have arrived at different conclusions as to the validity of this law, and the attention of the Legislature is called to such conflict with a view of providing a tribunal whose adjudication will be final.

### 16.—Same—Constitutional Law—Rule Stated.

It is a rule, not only in this court, and the Supreme Court, but one announced by all law writers that if there be a doubt as to the constitutionality of a law, the doubt must be solved in favor of its validity. Lytle v. Halff, 75 Texas, 128, and other cases.

### 17.—Same—Pool Hall Law—Statutes Construed—Constitutional Law.

Chapter 74, Acts of Thirty-third Legislature, known as the Pool Hall Law, neither delegates the power to enact a law, nor the authority to suspend a law. It is an Act complete in and of itself, and whatever result flows from taking advantage of its provisions, the law decrees, and it alone. Following Ex parte Francis, 72 Texas Crim. Rep., 304. Davidson, Judge, dissenting.

From Milam.

Original habeas corpus proceeding, asking release from arrest under a charge of violating the pool hall law.

The opinion states the case.

*Lyles & Lyles* and *Wallace & Moore,* for relator.—This group consists of those statutes which delegate authority to make or suspend laws.

Whenever this has been done, beyond question, such statutes have universally been held to be invalid unless authorized bv express constitutional provision.

In this group is comprehended the various local option laws, most frequently relating to the liquor license question.

In reviewing the cases in the several jurisdictions in which the statutes have been challenged for this reason, considerable confusion exists as to the results reached. At first it seems to have been generally held that regardless of the form of the statutes the effect of the same was identical, that is, that the law was to take effect in consequence of a vote considered as an expression of the will of the voters as to whether the law was proper or not; and, therefore, constituted in effect a delegation of the legislative functions, and was consequently void. Later the courts began to differentiate the statutes according to phraseology; and when the statute expressly declared that no liquor could be sold without a license and that the electors should determine whether or not license should be granted, the act was sustained upon the theory that the law was a complete and general act within itself, to become effective only upon the contingency of an affirmative vote by the electors of a given municipality, and the vote arose from the law and not the law from the vote.

To the contrary, those statutes which in substance submitted to the electors the general question as to whether or not liquor should be sold, were held unconstitutional because of a delegation of legislative authority to make a law.

The rule followed by most jurisdictions seems to be, assuming that there is no express constitutional inhibition of such a law, that if the act is complete within itself and makes a general law, which shall become effective upon the contingency of a favorable vote by the electors in a given political subdivision, that the law is valid; but that if the law is not complete; if it is not general; if it does not within itself prescribe a general rule of action, but gives to the voters of a given political subdivision the authority to make one themselves, that it is bad. Westheimer v. State, 11 Ind., 484; Rice v. Foster, 4 Har. (Del.), 479; Thorne v. Cramer, 15 Barb. (N. Y.), 112; Bradshaw v. Lankford, 73 Md., 430; Elliott v. City of Detroit, 121 Mich., 614; opinion of judges of Supreme Court of Massachusetts to Legislature, 160 Mass., 586; People v. Collins, 3 Mich., 343; Ex parte Wall, 48 Cal., 279; State v. Weir, 33 Iowa, 134; Barto v. Himrad, 8 N. Y., 483; Santo v. State, 2 Iowa, 165.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—The sole question involved in this case is the constitutionality of what is known as the "Pool Hall Law," being chapter 74 of the Acts of the Thirty-third Legislature.

The law provides for a petition to the Commissioners Court, and the court is required by the law to order the election when the petition is '

signed by the requisite number of voters; the law provides how the election shall be held, and how the result shall be declared. In fact, the law as passed by the Legislature is minute in all its details, and provides for everything that is necessary to be done and is mandatory in its provisions. The law then provides:

"When any such election has been held and has resulted in favor of the prohibition of the operation and maintenance of pool halls within the territory for which the election is held, any person who shall thereafter, within the prescribed bounds of said territory, operate or maintain a pool hall such as is defined herein shall be subject to prosecution, and on conviction shall be punished by a fine of not less than twenty-five and not to exceed one hundred dollars, or by confinement in the county jail not less than thirty days nor more than one year, and each day such pool hall or pool room is run shall be a separate offense."

It is thus seen that all the voters can do or determine is whether or not they will pass their county under the provisions of the law as enacted by the Legislature. This is an "option" given to the voters of each county by the law enacted by the Legislature and nothing more.

As said, there is nothing to pass on in this case other than the constitutionality of the law,—the agreement on file stating: "That said John Mode (relator) did operate a pool hall, as charged in the information, and unless said law is unconstitutional he is not entitled to the writ of habeas corpus." This question was before us in the case of Ex parte Francis, 72 Texas Crim. Rep., 304, and after a most careful and thoughtful consideration we upheld the validity of the law, Judge Davidson, however, entering a dissent. Since the rendition of that opinion our Supreme Court, in the case of Ex parte Mitchell, 177 S. W. Rep., 953, has held the law invalid. Judge Hawkins entering his dissent to such holding. The opinion of the majority of the Supreme Court base their holding on two grounds: "(1) That it amounts to a delegation by the Legislature of its own legislative power imposed upon it by the Constitution which it alone must exercise and which it may not commit to any other agency; (2) that it authorizes the suspension of a general law of the State by the voters of a county, namely, the statute licensing the operation of pool halls generally within the State, in violation of article 1, section 28, of the Constitution, which is, 'No power of suspending laws shall be exercised except by the Legislature.'" Judge Davidson's dissent in the Francis case, supra, being also based upon these grounds.

As to the rule of law, that the Legislature can not delegate its power to either enact a law or suspend a law, we agree with the Supreme Court, and so held in the case of Ex parte Francis, supra, holding in that case, "if the Act in question delegated the power and authority to suspend a law of the State, or to enact a law, of course, it would be unconstitutional." So the difference in the opinions of the Supreme Court and this court is not whether the Legislature has the power to delegate its power and authority, in the particulars named, but by the law enacted by the Legislature, known as the "Pool Hall Law" has the Legislature

delegated its power to enact a law or suspend a law of the State? That court placed the construction on the law that it did do so, while we held it did not do so. Having the utmost respect for the ability of the members of the Supreme Court so holding and our senior judge, Judge Davidson, when this application was presented, we granted the writ and set it down for a hearing in order that we might again have the question presented by eminent counsel and that we might give it more careful thought and study. We regret that our Supreme Court has not as yet filed its opinion, giving its reasons why it thought a proper construction of the Act would show a delegation of the power and authority of the Legislature. In the short opinion filed there is a mere statement that they so hold, yet do not point out wherein the Act does do so, and neither does the dissenting opinion of Judge Davidson in the Francis case, supra.

Not being favored with their reasons for so holding, during our vacation just closed, we have studied the text-books and the decisions of all the other States in the Union, and we find not only is the great weight of authority with the holding of this court, that such an Act as the "Pool Hall Law" does *not delegate* the power and authority of the Legislature to enact a law or suspend a law, but ascertain all the text-books of any note so hold, and the courts of last resort of every State in the Union (with possibly one solitary exception) so hold, and we are confirmed in our opinion that the law in question *does not delegate the power and authority of the Legislature in either of the respects named, and that the law is valid.*

It is true that some of the earlier decisions did so hold, but upon a more mature thought each of the courts so holding has receded from such conclusion and overruled their earlier decisions.

Those who contend that a "local option law" is a delegation of the authority and power of the Legislature to enact a law rely mainly upon the first case in which it was so held—Parker v. Commonwealth, 6 Pa., 307—but the Pennsylvania Supreme Court thereafter overruled that case, and in the case of Locke's Appeal, 72 Pa., 494, in a clear and lucid opinion, point out the error in the Parker case, and so aptly discuss the question there and here involved, we copy at length from the opinion in the latter case. It holds:

"What did the Legislature, in this section, submit to the people, and what did they not submit? This is quite as clear as any other part of the Act. Each elector is to vote a ticket *for* license or *against* license. He is allowed by the law to say, 'I am for the issuing of license,' or 'I am against the issuing of licenses,' and thus to express his judgment or opinion. But this is all he was permitted by law to do. He declared no consequences, and prescribed no rule resulting from his opinion. Nor does the majority of the votes declare a consequence. The return of a majority is but of a mere numerical preponderance of votes, and expresses only the opinion of the greater number of electors upon the expediency or inexpediency of licenses in this ward. When this is certified by the return, the Legislature, not the voters, declare 'it shall

(or it shall not) be lawful for any license to issue for the sale of spirituous liquors.' Thus it is perfectly manifest this law was not made, pronounced or ratified by the people; and the majority vote is but an ascertainment of the public sentiment—the expression of a general opinion, which, as a fact, the Legislature have made the contingency on which the law shall operate. When the law came from the halls of legislation it came a perfect law, mandatory in all its parts, prohibiting in this ward the sale of intoxicating liquors without license; commanding an election to be held every third year to ascertain the expediency of issuing licenses, and when the fact of expediency or inexpediency shall have been returned, commanding that licenses shall issue or shall not issue. Then what did the vote decide.? Clearly, not that the Act should be a law or not be, for the law already existed. Indeed, it was not delegated to the people to *decide* anything. They simply declared their views or wishes, and when they did so, it was the *fiat* of the law, not their vote, which commanded licenses to be issued or not to be issued.

"Now, in what respect does a vote upon license or no license, in a particular ward or township, differ from a vote, whether a new township shall be continued or annulled; or from a vote to determine whether a seat of justice shall be continued where it is or be removed to another place; or from a vote for or against a subscription by a city to the stock of a railroad company; or from a vote of the people of a district for or against a consolidation of it with a city? Yet in all these instances (to which reference will be made hereafter) it has been decided that the determination of these questions by a vote of the people interested in them, and an enactment of law dependent the result of this vote, are not a delegation of the law-making power to the people, but a submission only of the expediency of the proposed measure. This is simply common sense, for in none of the instances did the Legislature commit to the people the making of the law, but merely the province of determining a matter important to wise and judicious legislation—something upon which the Legislature deemed it proper its own act should wait, and then should operate accordingly. The wit of man can not draw a well grounded distinction between the result of a vote upon license in a township, and the result of a vote upon the existence of a township, and the removal of a courthouse, or a subscription to stock, or the consolidation of an outlying district with a city.

"The Legislature in the Act of 1871 have given to the people a *law,* not a mere *invitation;* needing no ratification, no popular breath to give it vitality. The law is simply contingent upon the determination of the fact, whether licenses are needed, or are desired in this ward. And why shall not the Legislature take the sense of the people? Is it not the right of the Legislature to seek information of the condition of a locality, or of the public sentiment there? The Constitution grants the power to the Legislature to legislate, but it does not confer knowledge. The very trust implies that the power should be exercised wisely and judiciously. Are not public sentiment and local circumstances just subjects of inquiry? A judicious exercise of power in one place may

not be so in another. Public sentiment or local condition may make the law unwise, inapt, or inoperative in some places, and otherwise elsewhere. Instead of being contrary to, it is consistent with, the genius of our free institutions, to take the public sense in many instances, that the legislators' may faithfully represent the people, and promote their welfare. So long, therefore, as the Legislature only calls to its aid the means of ascertaining the utility or expediency of a measure, and does not delegate the power to make the law itself, it is acting within the sphere of its just powers.

"It is urged that Parker v. Commonwealth, 6 Barr, 507, decided the question before us. That case was overruled soon after it was decided, not in express terms, it is true, but its foundation was undermined when it was held that laws could constitutionally be made dependent on a popular vote for their operation. The reasoning in Parker v. Commonwealth is fallacious, in assuming the fact that there was a delegation of legislative power. There is much in the opinion well and ably said. The first eight pages may be passed over, and we are brought then to the marrow of the argument, which is contained in the following sentences: After a summary of the Act of 1846 Justice Bell proceeds to say, that as a *statute* it 'depends for its *validity* and *binding efficacy,* within the several counties named in it, upon the popular vote of designated districts.' 'Possessing no *innate* force, it remains a *dead letter until breathed upon by the people,* and called into activity by an exertion of their voice in their primary assemblies.' 'If a majority within a particular district should vote negatively upon the question yearly to be submitted to the people, *the Act as a statute has no existence.*' 'If a majority of the votes be cast in the affirmative, *then the Act is to take effect as a statute.*' 'It operates *not proprio vigore,* but, if at all, only by virtue of *a mandate expressed subsequently* to its enactment, in pursuance of an *invitation* given by the legislative bodies.' '*As it left the halls* of legislation it was *imperfect and unfinished;* for it lacked the qualities of command and prohibition absolutely essential to every law.' I have italicised the portions which show the thought of the opinion and evince the assumption on which the argument rests. If we admit the fact that the law now before us was of this character, an imperfect and unfinished act, a mere invitation to the people to issue their subsequent mandate, and to breathe into it all its vitality, and thus give to it all its validity and binding efficacy as a law, we might have to concede the conclusion that there was a delegation to the people of the power to legislate. But it is beyond cavil that when the Act of 1871 left the halls of legislation it was a mandatory law in all its parts, and the only thing committed to the people was to vote for or against the issuing of licenses, and thereby supply the evidence of expediency. It acts *proprio vigore,* and is called into existence by no subsequent popular mandate. By its command the sale of liquors is forbidden, the popular vote is taken, and its effect declared. This popular vote is but the law's appointed means of determining a result, which the law enacts, in an alternative form, shall be the contingency of its operation.

The law did not spring from the vote, but the vote sprang from the law, and the law alone declared the consequence to flow from the vote.   The assumption that the Act is not a law, till enacted by the people, is the foundation of the argument, and with its fall the superstructure vanishes.   The character of this law is precisely that of hundreds of others, which the legislative will makes dependent on some future act or fact for its operation.   To assert that a law is less than a law because it is made to depend on a future event or act, is to rob the Legislature of the power to act wisely for the public welfare, whenever a law is passed relating to a state of affairs not yet developed, or to things future, and impossible to be fully known.   Such an assertion attacks even the moral government of the Creator.   God breathes into His creature the power of judgment and discretion, and then declares to him in His law: 'As you determine your act, so shall be the consequence.'   The law is active and operates only when man determines.   Does man or God make the law?"   See also McGonnell's License, 209 Pa., 327.

Some who contend that the local option law is a delegation of the power of the Legislature to suspend a law, as well as a delegation to enact â law, cite the case of Ex parte Wall, 48 Cal., 279, but the California Supreme Court had never so held until the rendition of that opinion, and shortly after the rendition of the opinion in the Wall case it was overruled.   In the case of Ex parte Beck, 162 Cal., 704, the California court discusses the question at length, and holds:

"The opinion in Ex parte Wall, 48 Cal., 279 (17 Am. Rep., 425), was concurred in by but three justices, Justices Rhodes and Crockett dissenting.   In its conclusion that such an act as was there and is here under consideration is void as an unwarranted delegation of legislative power, it is now opposed to the overwhelming weight of authority in other States, as we shall show hereafter.   Subsequent decisions of this court have been such, we think, as to practically overrule it as an authority upon the question we are considering.

"In People v. Nally, 49 Cal., 478, the legislative Act under consideration was one providing for an election in Siskiyou County on the question of the annexation to Siskiyou County of a portion of Klamath County, described in the Act, and that if a majority voted for annexation statements of the result should be forwarded to the boards of supervisors of Klamath and Humboldt Counties, and that thirty days thereafter the organization and government of Klamath County must be abandoned, and the described portion thereof annexed to Siskiyou County and the remainder to Humboldt County.   The election was held in Siskiyou County as ordered, and a majority of the votes were in favor of the annexation.   The subsequent proceedings were as required by the Act.   Thereafter, Nally, the assessor of Klamath County, refused to prepare an assessment book for that county, claiming that it was no longer a county.   The proceeding was a mandamus to compel him to prepare such a book.   The writ was denied.   The principal opinion in the case, that of Justice Crockett, concurred in by Justice Rhodes, declared that the Act related to a matter of 'purely local concern, in

which the people of the district to be affected by it were alone concerned.' Ex parte Wall was referred to as a case wherein the question was whether a statute authorizing a general law to be suspended in certain political subdivisions of the State, by a vote of the people of the district, was a delegation of legislative power, the basis of this statement probably being the fact that there was then a general law of the State providing for the licensing of the sale of intoxicating liquors and fixing the amount of license, which we have before referred to. The court said: 'However the rule may be in that class of cases, it is settled, I think, by an overwhelming weight of authority in this and many other States, that in matters of purely local concern it is competent for the Legislature to enact that a statute affecting only a particular locality shall take effect only upon condition that it is approved by a vote of the majority of the people whom the Legislature shall decide are those who are interested in the question.' In People v. McFadden, 81 Cal., 489 (15 Am. St. Rep., 66, 22 Pac. Rep., 851), an Act providing for the formation of a new county, upon the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, was declared by the court in bank to be constitutional and not a delegation of legislative authority. It is squarely held that as to such a question, the same being primarily one of local concern, the subsequent event upon which the taking effect of the legislative Act might be made to depend, could be a favorable vote of the electors primarily interested. 4 Cooley on Constitutional Limitations (p. 141 et seq.) was quoted approvingly as follows: 'But it is not always essential that a legislative Act should be a completed statute which must in any event take effect as a law, at the time it leaves the hands of the legislative department. A statute may be *conditional,* and its taking effect may be made to depend upon some subsequent event. Affirmative legislation may in some cases be adopted, of which the parties interested are at liberty to avail themselves or not, at their option.' In holding that such event might, as to certain questions, be a favorable vote of the electors, the decision in People v. McFadden, 81 Cal., 489 (15 Am. St. Rep., 66, 22 Pac. Rep., 851), was squarely opposed to material portions of the majority opinion in Ex parte Wall. Board of Law Library Trustees v. Board of Supervisors, 99 Cal., 571 (34 Pac. Rep., 244), is still more in point. The Act there involved was one providing for the establishment of county law libraries in the counties of the State, and it contained a proviso as follows: 'And provided further, that it shall be discretionary with the board of supervisors of any county to provide by ordinance for the application of the provisions of this Act to such county' the court Bank said: 'We think the Legislature had the power to provide in the Act that counties might come within or remain without the provisions of the Act, as the boards of supervisors of the respective counties might determine. It is not necessary to enter into a discussion of the constitutionality of this law in that regard, for in the recent case of People v. McFadden, 81 Cal., 489 (15 Am. St. Rep., 66, 22 Pac. Rep., 851), involving the constitutionality of the Act creating

the County of Orange, there is found an exhaustive discussion of the same principle, with the citation of many cases bearing upon the question.' And finally, in Wheeler v. Herbert, 152 Cal., 224, 234 (92 Pac. Rep., 353), it was declared as follows: 'That it is competent for the Legislature to pass a law which shall be executed only in the event that a majority of a certain class of persons shall declare in favor of it is a principle too well settled to require discussion,' citing People v. McFadden, 81 Cal., 489 (15 Am. St. Rep., 66, 22 Pac. Rep., 851), and other cases.

"It thus appears that it is now settled in this State, as it is generally elsewhere, that the rule prohibiting the delegation of its legislative powers by a State Legislature, does not necessarily prohibit a conditional statute, the taking effect of which may be made to depend upon such a subsequent event as its approval by the electors of the locality specially interested. (See Cooley on Constitutional Limitations, pp. 163 to 165 and 171, 172.) It is said on the pages last referred to: 'It would seem, however, that if a legislative Act is, by its terms, to take effect in any contingency, it is not unconstitutional to make the time when it shall take effect depend upon the event of a popular vote being for or against it—the time of its going into operation being postponed to a later day in the latter contingency. It would also seem that if the question of the acceptance or rejection of a municipal charter can be referred to the voters of the locality specially interested, it would be equally competent to refer to them the question whether a State law establishing a particular police regulation should be of force in such locality or not. Municipal charters refer most questions of local government, including police regulations, to the local authorities, on the supposition that they are better able to decide for themselves upon the needs, as well as the sentiments, of their constituents, than the Legislature possibly can be, and are, therefore, more competent to judge what local regulations are important, and also how far the local sentiment will assist in their enforcement. The same reasons would apply in favor of permitting the people of the locality to accept or reject for themselves a particular police regulation, since this is only allowing them less extensive powers of local government than a municipal charter would confer, and the fact that the rule of law on that subject might be different in different localities, according as the people accepted or rejected the regulation, would not seem to affect the principle, when the same result is brought about by the different regulations which municipal corporations establish for themselves in the exercise of an undisputed authority.' And on pages 173 and 174, while admitting that there have been some decisions to the contrary, the learned author says: 'Such laws are known, in common parlance, as local option laws. They relate to subjects which, like the retailing of intoxicating drinks, or the running at large of cattle in the highways, may be differently regarded in different localities, and they are sustained on what seems to us the impregnable ground, that the subject, though not embraced within the ordinary power of the municipalities to make by-laws and

ordinances, is, nevertheless, within the class of police regulations, in respect to which it is proper that the local judgment should control.'

"On the question whether a law relating to the retailing of intoxicating liquors relates to such a subject that its taking effect in any particular locality of the State may be made to depend upon a favorable vote of the electors, without involving a forbidden delegation of legislative power, the decisions are practically unanimous. This is so declared in Joyce on Intoxicating Liquors, secs. 368 and 371. The following decisions sustain this view, viz: State v. Wilcox, 42 Conn., 364 (19 Am. Rep., 536; McPherson v. State, 174 Ind., 60 (31 L. R. A. (N. S.), 188, 90 N. E. Rep., 610); State v. Forkner, 94 Iowa, 16 (28 L. R. A., 206, 62 N. W. Rep., 772); Stickrod v. Commonwealth, 86 Ky., 285, 290, 5 S. W. Rep., 580; Fell v. State, 42 Md., 71 (20 Am. Rep., 83); Commonwealth v. Bennett, 108 Mass., 27; State v. Pond, 93 Mo., 606 (6 S. W. Rep., 469); In re O'Brien, 29 Mont., 530 (1 Ann. Cas., 373, 72 Pac. Rep., 196); Paul v. Gloucester Co., 50 N. J. L., 585 (1 L. R. A., 86, 15 Atl. Rep., 272); Gordon v. State, 46 Ohio St., 607 (6 L. R. A., 749, 23 N. E. Rep., 63); Fouts v. City of Hood River, 46 Ore., 492 (7 Ann. Cas., 1160, 1 L. R. A. (N. S.), 483, 81 Pac. Rep., 370); Locke's Appeal, 72 Pa. St., 491 (13 Am. Rep., 716); State v. Barber, 19 S. Dak., 1 (101 N. W. Rep., 1078); State v. Scampini, 77 Vt., 92 (59 Atl. Rep., 829); State v. Donovan, 61 Wash., 209 (112 Pac. Rep., 260). Without any discussion of this particular question, local option laws of a similar character were sustained in Ladson v. State, 56 Fla., 54 (47 So. Rep., 517); City of Barnesville v. Means, 128 Ga., 197 (57 S. E. Rep., 422); Garrett v. Mayor, 47 La. Ann., 618 (17 So. Rep., 238); Feek v. Township Board, 82 Mich., 393 (10 L. R. A., 69, 47 N. W. Rep., 37); State v. Johnson, 86 Minn., 121 (90 N. W. Rep., 161); Hoover v. Thomas, 35 Texas Civ. App., 535 (80 S. W. Rep., 859), and Willis v. Kalmbach, 109 Va., 475 (21 L. R. A. (N. S.), 1009, 64 S. E. Rep., 342). There is now practically no State holding to the contrary with the possible exception of Tennessee (see Wright v. Cunningham, 115 Tenn., 445 (91 S. W. Rep., 293), a few earlier decisions in Pennsylvania, Iowa, and Indiana having been practically overruled by later decisions, as above shown. . . .

"It is claimed that the Act gives the electors of the specified districts the power to suspend provisions of general laws of the State, such as, in the case of cities and towns organized and existing under the general Municipal Corporation Act, provisions authorizing the licensing of the traffic in alcoholic liquors for purposes of revenue and regulation, and in the case of portions of supervisor districts outside of cities and towns, provisions of the County Government Act of the same character. This claim rests on the same basis as that of there being a delegation by the Legislature of its legislative power.

"As we have shown, there is no delegation of legislative power to the electors. It is the Act enacted by the State Legislature that suspends the provisions referred to, and not the vote of the electors. As we have seen, the Legislature has simply enacted a law applicable to the whole .

State, which in substance and effect prohibits the sale or distribution of alcoholic liquor in any of the districts created by the Act where, twenty-five per cent of the electors insisting on an official expression of opinion thereon, a majority of the electors are not in favor of such traffic. The Act constitutes a declaration by the State Legislature that such traffic is inexpedient in any such district where such a large proportion of the people are opposed thereto, and denounces such traffic under such circumstances as a crime."

Maize v. State, 4 Ind., 342, is at times relied on as sustaining the proposition that a local option law delegates legislative authority, but the Supreme Court of Indiana, in the case of McPherson v. State, 174 Ind., 195, shows that the Maize case was discredited, if not directly overruled, in Groesch v. State, 42 Ind., 558, and in the McPherson case the local option law of Indiana is held valid. In that case the court says: "The Legislature in this Act has not attempted to give the voters power or authority to assist in making the law. The people by voting 'for or against prohibition' add nothing to the law, and take nothing from it. It is the law that authorizes the vote, and the law that declares what the result of the election shall be. All the vote can, or does, accomplish is the disclosure of a local condition, namely, whether it is expedient to prohibit the sale of intoxicating liquors as a beverage in the voting district. The voters have nothing to do even with the expediency of the law. The Legislature has rightfully determined that by providing in the Act that sales as a beverage shall not be peremptorily denied in counties therein, a majority of the electors express themselves as favorable to such sales, and that such sales shall be denied in counties where a majority express themselves as favorable to its exclusion. So it is seen that, if a majority vote against the sale, it is the Legislature and not the voters that declares it shall not be sold. The vote springs from the law, and not the law from the vote. The principle is in perfect accord with our institutions. It has behind it the popular sympathy and support of the people, and a sound public policy." McClanahan v. Breeding, 172 Ind., 457.

Sometimes some of the decisions of Iowa are referred to as sustaining the contention that a local option law is a delegation of legislative power. But the Iowa Supreme Court places no such construction on these decisions. In the case of Eckerson v. Des Moines, 137 Iowa, 452, it is held: "We may concede that the law-making body of the State is not authorized to submit to a popular vote of the State the *question whether or not an Act proposed by it shall become a law.* This court has so held in a number of cases. Santo v. State, 2 Iowa, 165; State v. Weir, 33 Iowa, 134; State v. Forkner, 94 Iowa, 733. But while this is so, it does not follow by any means that the law-making body may not reserve to the electors of any subdivision of the State—included within the interested scope of operation of an Act designed to have effect upon local governmental conditions—*the right to determine on popular vote whether or not they will advantage themselves of the Act.* If an Act in question is complete in itself and requires nothing further

to give it validity as a legislative Act, it is not vulnerable to attack on constitutional grounds simply because the limits of its operation are made to depend upon a vote of the people. And such is not only the doctrine of our cases, but it accords with the great weight of authority."

In State v. Forkner, 94 Iowa, 1, the Supreme Court held: "The popular will is expressed under and by virtue of the law that is in force and effect and the people neither make or repeal it. They only determine whether a certain thing shall be done under the law, and not whether said law shall take effect. The law had full and absolute vitality when it passed from the hands of the Legislature; and the people under the 'rule of action' therein given for their government proceeded to act. The same rule—the same law—was given to all the people of the State, to all parts of it; the same method of taking the vote was presented for all the counties; the same penalties were attached. As a result a different regulation, of a police nature, might exist in one county from what existed in another, just as one county might determine by a popular vote that a higher rate of tax should be levied than that provided by the general law. In one case the people of the counties are permitted to make certain police regulations, to have the force of law; in the other a law is enacted by the Legislature, which can have no force in any county until sanctioned by a vote of the people thereof. The Act in question is complete in itself, requiring nothing further to give it validity, and does not depend upon the popular vote of the people, or if it does, depends upon this vote simply to determine the limits of its operation. The rule we have established, first announced more than thirty years ago, is supported by the overwhelming weight of authority. See Black, Intox. Liq., sec. 45, and cases cited."

The case of Barto v. Himrod, 8 N. Y., 483, is also sometimes referred to as sustaining the doctrine that local option laws are unconstitutional, but the New York court of final resort demonstrates it is subject to no such construction in Stanton v. Board of Supervisors, 191 New York, 428, and that it only decides that the Legislature can not submit the question of whether a certain Act is to become a law of the State— that the Legislature must enact the law. No one questions this. But in Stanton v. Board of Supervisors, supra, the court holds that the Legislature may enact a law of a police nature and provide that localities may by popular vote determine for themselves whether or not any license shall be granted in their respective localities. This case deals at length with these matters and upholds the validity of local option laws. See also Bank of Rome v. Village of Rome, 18 N. Y.; 38; Bank of Chenango v. Brown, 26 N. Y., 467; Clark v. City of Rochester, 28 N. Y., 605; Village of Gloversville v. Howell, 70 N. Y.; 287; in the matter of 34th Street Railway, 102 N. Y., 343.

Delaware is also often referred to as sustaining the proposition that a local option statute is unconstitutional, in that it is a delegation of the legislative power, and the case of Rice v. Foster, 4 Har., 479, is cited as so holding, and is one of the cases that caused a seeming con-

flict in the earlier decisions. However, the Delaware court just about the time they rendered the above decision, held a statute valid which authorized a vote to be had in the various communities to determine whether or not a tax should be levied for school purposes. (See Steward v. Jefferson, 3 Har., 335.) If submitting the matter to a vote was a delegation of legislative power in one instance, it certainly was in the other, and vice versa, because there was no more warrant in their Constitution for holding one election than the other. However, the Delaware Supreme Court has in recent years had the question before them again, and after calling attention to a change in their Constitution, which rendered unnecessary the discussion of the opinion in Rice v. Foster, supra, that court holds in State v. Fountain, 69 Atl. Rep., 926, in passing on an Act providing for submitting to a vote of the qualified electors of the several districts of the State the question of whether the manufacture and sale of intoxicating liquors should be licensed or prohibited: "The police power, which is exclusively in the States, is competent to prohibit the sale and manufacture of an article of commerce, which they believe to be pernicious in its effects, and all measures of restraint or prohibition necessary to affect the purpose are within the scope of that authority. There can be no distinction in principle in the application of the Federal Constitution to a prohibitory statute and to a local option statute; the one being a direct and express prohibition of the sale of intoxicating liquors, and the other a conditional prohibition thereof, the condition being a result of a vote to be taken upon the question. It can be said, therefore, as the result of the examination of many authorities, that a local option statute, such as the one in question, is not obnoxious to any provision of the Constitution of the United States." Citing Boston Beer Co. v. Massachusetts, 97 U. S., 25; Grindlig v. Chicago, 177 U. S., 183; Gray v. Connecticut, 159 U. S., 74, and other cases from the Supreme Court of the United States.

The above are the cases principally relied on by those contending that a local option law is a delegation of legislative power, and it is seen that in each and every instance they are no longer followed in the States where rendered, but each has been distinguished, discredited, or specifically overruled, and in each of the States, Pennsylvania, California, Iowa, Indiana, New York and Delaware, local option laws are sustained, and held not to be a delegation of legislative authority and power to either enact a law or to suspend a law. But we did not stop with this investigation, but went to the reports of each State in the Union, and found that the various States were unanimous (with one possible exception) in sustaining such laws. And we give in brief form the holding of each of the other States:

Alabama—In State v. Montgomery, 59 So. Rep. (Ala.), 298, the Supreme Court of Alabama holds: "It is urged that the Parks bill and Smith bill delegate to the people legislative power, because they hinge the issuance of license to sell liquor and the establishment of dispensaries, according to the preference of the electorate, upon *authori-*

*zation* or *legalization* of the sale thereof by the vote of the people. In short, the contention is that the vote of the people *and not the law,* authorizes—legalizes—the sale. We would prefer out of deference to counsel to find in this contention something more than a mere play of words, but we are unable to do so. The italicised terms must be referred to the legislative purpose, to be read from these intimately related laws. The issues submitted to the electorate and the unequivocal provision of the consequences of the choice by the electorate, favorable to the restoral of the manufacture and traffic to the county voting thereon, demonstrate that no legislative power, no commission to the electorate to make law was intended or effected. All the electorate can do under these laws (as respects the displacement of an existing order of things when the election is held) is to choose whether to pass their county under the laws already then written. No court could, under acts employing as these do, the terms discussed, possibly attain any other conclusion."

In Davis v. State, 141 Ala., 84, the Supreme Court of that State sustains the validity of a local option stock law, and holds such law not a delegation of legislative authority and power, and says it is legislation to take effect upon a fixed contingency. See also McGrew v. Court, 89 Ala., 407; Edmonson v. Ledbetter, 114 Ala., 479.

Arkansas—In the case of Boyd v. Bryant, 35 Ark., 63, the Supreme Court holds: "It is further submitted that the Act is unconstitutional because it is left to take effect or operate in the school districts at the option of a majority of the adult residents thereof, etc. In other words, that it is a *local option law.* If the Act is unconstitutional for that reason, it would follow that all our statutes making the granting or withholding of licenses to sell liquors, etc., to depend upon the suffrages of the electors of townships and wards, would be for a like reason invalid, and the State and her courts have done great injustice to vendors of ardent spirits by enforcing such acts, for they are and have been classed as local option laws. In some States such laws have been held unconstitutional, but the great weight of authority is now in support of the validity of such acts."

Arizona—In Thalheimer v. Board of Supervisors of Maricopia County, 93 Pac. Rep., 1129, the Supreme Court of Arizona holds: "The only question for our consideration is the validity of the local option legislation as embodied in title 43, Rev. Stats., 1901. That title provides that upon a petition being filed with the board of supervisors, signed by a certain number of voters, an election shall be ordered, etc. The contention of appellant is that the Act is invalid for the reason that the Legislature has attempted to delegate its power. The legal conflict over the local option laws in various States has centered upon the question whether they in fact involve a delegation of legislative power, and the *overwhelming weight of authority* is that they do not. We content ourselves with calling attention to two recent decisions in which the authorities are collated and commented upon.

In re O'Brien, 29 Mont., 530; Founts v. City of Hood River, 46 Ore., 492.

Colorado—In Schwartz v. The People, 46 Colo., 240, the Supreme Court of that State holds valid the local option law of that State. The court says: "By the local option law power and authority is conferred upon the qualified electors of certain specified political subdivisions of the State to determine by popular vote whether a given district or political subdivision shall become anti-saloon territory, or having by said vote become anti-saloon territory, whether it shall remain so. When a majority of the qualified voters within such district or subdivision voting on the question declare in favor of anti-saloon territory, then the statute provides that it shall be unlawful to sell intoxicating liquors at all therein." Thus it is seen that the same question was involved as in our pool hall case, and the Supreme Court sustained the validity of the law in an exhaustive opinion. The court had theretofore so held also in the case of People v. Rains, 20 Colo., 489, in which it was specifically held it was not an unlawful delegation of legislative power and authority. The same principle is reannounced in Railway v. State Railway Commission, 54 Colo., 65, sustaining the law creating a State Railway Commission, and conferring upon it authority to act.

Connecticut—In the case of State v. Wilcox, 42 Conn., 364, the Supreme Court held: "The Act of 1874 with regard to the sale of intoxicating liquors authorized the county commissioners to grant licenses for such sale in the several towns of the county, such licenses to be granted only on recommendation of a majority of the selectmen of the respective towns, and provided that any town might, at its annual meeting, determine by ballot, whether the selectmen should make any such recommendations for the year ensuing, and forbade the selectmen to make any recommendations if the town so instructed them, and prohibited the sale of liquors by any person not so licensed. Held to be constitutional and valid, and that the Act does not delegate legislative power."

Florida—In Cotton v. County Commissioners of Leon County, 6 Fla., 610, it was early held "that the provision of the Act of the Legislature, which required that a subscription to the stock of the railroad company by county commissioners should depend upon a vote of the qualified electors of the county, was not a delegation to the people of legislative powers." The Act authorized a subscription if three-fourths of the people at an election voted in favor of it, and prohibited a subscription if more than one-fourth voted against it.

In State v. Railway Co., 56 Fla., 617, the Supreme Court of that State holds that it is competent for the Legislature to enact a law complete in itself to take effect of its own force upon the happening of a contingency, citing many authorities from that State and other States.

In State v. Sammons, 57 So. Rep. (Fla.), 199, the Supreme Court of Florida, in speaking of an Act of their Legislature, says: "When the requisite vote was cast it afforded the contingency upon which the

Act by its terms became effective." Its validity was sustained, and held not to be a delegation of legislative authority and power.

The statutes of Florida provide "that it shall be the duty of the board of county commissioners of each county in the State, upon the presentation to said board at a regular or special meeting thereof of a written application asking for an election in the county in which said application has been made, to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited therein, and signed by one-fourth of the registered voters of said county, to order an election in said county, not oftener than once in every two years, to decide whether the sale of intoxicating liquors, wines and beer should be prohibited in said county," etc. This statute has been upheld, and is now in force in that State. Arpen v. Brown, 19 Fla., 563; Cook v. State, 25 Fla., 698; Ladson v. State, 56 Fla., 54; Randall v. Tillis, Sheriff, 43 Fla., 43; Minn v. Finger, 66 Fla., 572.

Georgia—In the case of Caldwell v. Barnett, 73 Ga., 604, the Supreme Court of Georgia seems to go much further than it is necessary to go to uphold a general local option law. It says: "Under our form of government, where the people rule, and where representatives in the Legislature are but agents of the people, and act alone for them, it would seem that when the wishes of the people as to whether a proposed Act should become a law can be clearly ascertained by an election, this mode would be consonant with the genius and form of our government. The fundamental law of the State, and even particular sections thereof, is and has been left to be determined by a vote of the people. If the Constitution, the organic law of the State, has been made to depend upon the vote of the people, it is not easy to perceive why a local law affecting a particular community should not be determined 'by a vote of the people of that locality. It has been the practice in this State for more than half a century to leave local questions, such as the location of county seats, the building of public houses, municipal charters and amendments thereof, to the vote of the people. Such laws have never been thought to be unconstitutional." See also Coleman v. Board of Education, 131 Ga., 653.

Idaho—In 1909 Idaho passed a law authorizing counties, etc., to vote on whether the sale of intoxicating liquors should be prohibited in the respective counties. The Supreme Court of that State, in the case of Gillesby v. County Commissioners, 17 Idaho, 587, sustained the constitutionality of the law. In Mimms v. Gilmore, 17 Idaho, 609, the constitutionality of the law is again passed on and sustained. And in Miff v. County Commissioners, 18 Idaho, 695, the court says: "By the adoption of the local option law the Legislature intended to authorize electors of each county to determine whether the sale of intoxicating liquors should be prohibited in the county." The law was fully sustained by the court, and held not to be a delegation of authority.

Illinois—In People v. McBride, 234 Ill., 146, the Supreme Court of Illinois holds: "A local option statute which is a complete expression

of legislative will is not invalid as a delegation of authority on the ground that such a law is to become operative by a vote of the people of the district affected." People v. Simond, 176 Ill., 165; People v. Hipley, 171 Ill., 44; Meigo Tier Trans. Co. v. Greer, 223 Ill., 104; Waugh v. Glos, 46 Ill., 604.

Kansas—In Cole v. Dorr, 80 Kan., 253, the Supreme Court of Kansas says: "The claim that in leaving the various cities free to adopt or reject the provisions of the Act of 1907 the Legislature attempted to delegate its powers to the people of these municipalities, requires little discussion. Even in jurisdictions where it is held that the taking effect of a statute can not be made to depend upon the result of a popular vote, the principle is recognized that 'if an Act is complete in itself, and requires nothing further to give it validity as a legislative Act, it is not vulnerable to attack on constitutional grounds simply because the limits of its operations are made to depend upon a vote of the people. If this court has not heretofore expressly approved this doctrine, it has approved it too nearly to leave any substantial ground for controversy. (See State v. Butler County, 77 Kan., 527, and cases cited.)' And so many other courts have affirmed it that the question can not fairly be regarded as an open one."

In Burlingame v. Thompson, 74 Kan., 395, the Supreme Court of that State holds that the Legislature may authorize cities and towns to prohibit and suppress pool rooms and pool halls, and upheld the validity of the statute so providing, wherein it was left optional with the cities and towns.

Kentucky—The Supreme Court in Commonwealth v. Weller, 14 Bush Repts., 218, holds an Act prohibiting the sale of intoxicating liquors in a certain county, and providing that it shall take effect upon ratification of the majority of the voters of the county, is constitutional. The taking effect of an Act of the Legislature may be made to depend upon the result of a popular vote of a county, since in such a case the people are not called upon to decide at the polls whether the Act authorizing the vote is a law, but whether or not they will accept its provisions.

Again in Anderson v. Com., 13 Bush, 485, the Kentucky Supreme Court holds a local option law referring it to the popular vote of a municipality whether licenses to sell liquor shall be granted or refused altogether is constitutional and valid; the question is one of local police power, and may constitutionally be left to the decision of the County Court, municipal authorities, or the qualified voters of a city or town, or court district. Gayle v. Owen County Court, 83 Ky., 61; Strickrod v. Com., 86 Ky., 285; Burnside v. Lincoln Co. Court, 86 Ky., 423.

Louisiana—In the case of Garrett v. Aly, 47 La. Ann., 618, the Supreme Court holds: Louisiana Act 76 of 1884, by which the Legislature declared that the vote or decision of the people of a parish shall control the sale of spirituous liquors, is within the constitutional power of the Legislature.

Massachusetts—In the case of Commonwealth v. Bennett, 108 Mass.,

27, the Supreme Court held: The Massachusetts statute of 1870, chapter 389, which provides that the inhabitants of any city may annually vote upon the question as to whether any person shall be allowed to sell intoxicating liquors, and in the event of such vote being unfavorable, the sale of such liquors in any such city or town shall be prohibited, is not unconstitutional in that it delegates legislative power. That court reannounces the rule in Com. v. Marlin, 110 Mass., 357; Graham v. Roberts, 200 Mass., 152.

Maine—In Fannin et al. v. Commissioners of Arostock County, 82 Atl. Rep., 545, the Supreme Court of Maine was passing on an Act of the Legislature of that State which left to the voters of the county the determination of a change in county lines, and the location of the registrary office. It was held not to be a delegation of legislative power, although no specific authority was found in the Constitution for so doing, it being a law to become effective upon the contingencies named.

Maryland—In the case of Fell v. State, 42 Md., 71, the Supreme Court of Maryland, in passing on a local option statute, holds: "Now what has been delegated to the voters by the Act of the assembly? Certainly not the power to make the law, or to repeal existing laws. They are called on by the first section simply to express by their ballots their opinion or sentiment as to the subject matter to which the law relates. They declare no consequences, prescribe no penalties, and exercise no legislative functions. The consequences are declared in the law and are exclusively the result of the legislative will. The Act of the assembly is a perfect and complete law as it left the halls of legislation, and was approved by the Governor, but by its terms it was made to go into operation in any district upon the contingency of a majority of the legal voters within the district being ascertained to be in favor of the prohibition. The question before us, therefore, resolves itself simply into this: 'May the Legislature constitutionally enact a law, and make its operation depend upon the contingency of the popular vote?'" Answering the question, it was answered in the affirmative, and the court held it was not a delegation of authority.

Michigan—The Supreme Court of Michigan in Floeck v. Board of Bloomingdale, 82 Mich., 393, holds, in regard to the local option law of that State: The statute provided for ascertaining the sense of the community by a vote of the legal electors. This is all their vote expresses, and there it ends. If the people prefer taxation to prohibition, then the general law continues in force, and the traffic is regulated. The Legislature in conferring upon the board the authority to pass such an order, had the right to prescribe the conditions under which it should be exercised, and this condition is that the majority of the legal voters vote in favor of the law. There is no constitutional objection to this. The voters do not make the law. The law, with its various provisions, was enacted by the Legislature. See also Attorney General v. Springville Tp. Board, 143 Mich., 523.

Minnesota—In State v. Cook, 24 Minn., 247, the Supreme Court of Minnesota holds: "An Act which authorizes the legal voters of a city

to determine whether licenses for the sale of liquors shall be granted, and providing that if the voters shall determine that no licenses shall be granted, any person thereafter who shall sell, barter or dispose of any spirituous, malt, fermented or intoxicating liquors, within the corporate limits of such city, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished as therein provided, is valid and not unconstitutional. And under such Act if the voters determine against granting licenses, it operates as a revocation of all outsatnding licenses." See also Ex parte Miller, 147 N. W. Rep. (Minn.), 660.

Mississippi—In Schulhen v. Bordeaux, 64 Mississippi, 70, the Supreme Court of that State upholds the validity of local option laws. It says: "On the question of the right to make an Act of the Legislature to depend for its operation on a future contingency, argument was exhausted long ago, and the principle established by oft repeated examples and by adjudication in this State and elsewhere in great numbers, that this may be done without violating the Constitution. It is idle to talk of precedent and subsequent contingencies or conditions, between defeating the operation of an Act or putting it in operation. There is no such deduction. It is merely fanciful and deceptive. It is for the Legislature in its discretion to prescribe the future contingency, and it is not objectionable on constitutional grounds that the popular vote is made the contingency. The purpose and scope of the Act is to take the popular sense whether or not the traffic shall be licensed by counties, and by vote, and it is valid and must be upheld." See also Board v. Davis, 59 So. Rep. (Miss.), 811.

Missouri—In the case of Maggard v. Pond, 93 Mo., 606, the Supreme Court of that State holds the Missouri local option Act of 1907, permitting the majority of the voters in a county, town or city, to determine whether the sale of liquors shall be prohibited and licenses refused thereon, was properly passed by the Legislature in the exercise of its police power, and the same is not unconstitutional as delegating legislative power to the people. See also State v. Moore, 107 Mo., 78; State v. Dugan, 110 Mo., 138; State v. Watts, 111 Mo., 553; State v. Handler, 178 Mo., 36; State v. Harp, 109 S. W. Rep., 578.

In the case of City of Tarkin v. Cook, 120 Mo., 1, the Supreme Court of Missouri says: "Keepers of billiard tables are not recognized by the State as exercising a useful occupation. They are subject to the police regulation of the State and by cities and towns granted them by the State. They are prohibited from allowing minors to play on their tables. Villages may prohibit them altogether under section 1672 of Revised Statutes. Public billiard halls are regarded by many as vicious in their tendencies, leading to idleness, gambling and other vices. Each municipality can best determine for itself to what regulation they should be subjected."

Montana—In the case of In re O'Brien, 29 Mont., 530, the Supreme Court of Montana holds: "The local option liquor law is not unconstitutional *as a delegation of legislative power.*" And among other things, the court says: "Counsel contend that the decisions of the courts of

.Texas and Kentucky should not be considered by this court, for the reason that the local option laws of those States were enacted pursuant to constitutional provisions, but we are unable to perceive the difference in effect between a law passed by a Legislature *because it is compelled so to do,* and one passed by a Legislature *because it has full authority and power to do so.* Each alike is a legislative mandate when duly passed, and each is of equal dignity and importance."

In Evers v. Hudson, 36 Mont., 136, in passing on a local option school law, the court holds: The Act of 1907, chapter 29, authorizing the establishment of county free high schools, being a local option law, of uniform operation, the taking effect of which in any particular county is made dependent upon a favorable vote of the electors, is not an unwarranted delegation of legislative power to such electors. See also State v. Holland, 96 Pac. Rep. (Mont.), 719.

Nebraska—In Cole v. Village of Culbertown, 86 Neb., 160, the Supreme Court holds: "The Legislature has full power to grant authority to villages to license, regulate or prohibit billiard halls, pool halls, or bowling alleys within the limits of such village." The same principle of law is reannounced in State v. Howard, 96 Neb., 278.

In State v. Ure, 135 N. W. Rep., 227, the Supreme Court of Nebraska holds: On the general subject of the powers of the Legislature to submit to the electors of local subdivisions of the State, the question whether they shall adopt or reject, as applying to such subdivision, the provisions of a general law, many cases are cited in 8 Cyc., 840, note 17. In this State so far as has been brought to our attention, the right of the citizens of a county to vote upon the division of the same, or the herd law, or upon the question of whether bounties should be paid by the county for the killing of wild animals, has never been questioned. We conclude, therefore, that it was within the power of the Legislature by general law to allow the electors of all cities in the same class to adopt or reject the commission plan of government.

Nevada—In the case of Warren, Relator, v. The District Court, 30 Nev., 225, the Supreme Court held a law valid which provided that "wherever a majority of the qualified electors, who are taxpayers, within the limits of a city or town proposed to be incorporated, shall desire to be organized into a city or incorporated they may apply in writing to the district of the proper county stating the name proposed for such incorporated town, accompanied by proof as to number of inhabitants. When such application is made, and the court becomes satisfied of the legal sufficiency thereof, it becomes the duty of the court to enter an order declaring the town incorporated. It is seen the law provided a means whereby a majority of the citizens could incorporate by accepting the provisions of the law, and it was contended this was a delegation of legislative power; that the law did not incorporate the town, but it was the act of the people in getting up and signing the petition and the court in entering the order that did so. The court said the Act is a general one, and may be made to apply to all unincorporated cities and towns in the State. It prescribes the conditions under which they may

be incorporated, and authorize the court to determine whether there has been a compliance with the requirements. The court is merely acting to give the law effect after having determined the requisites as fixed by; the Legislature. Upon compliance with and ascertainment and certification of the conditions by the court the incorporation results from provisions of the law as passed by the Legislature. We feel satisfied the law does not confer legislative power, and the law is not unconstitutional and invalid.

New Hampshire—In State v. Noyes, 30 N. H., 279, the Supreme Court upheld a local option statute dealing with bowling alleys, holding that "a statute making bowling alleys, situate within twenty-five rods of a dwelling house, nuisances, is not unconstitutional, nor will it be so, though the statute is to be in force only in those towns in which it is adopted at a town meeting."

New Jersey—In New Jersey local option laws are and have always been sustained. In the case of Paul v. Judge of the Circuit Court, 50 N. J. L., 585, the Supreme Court tersely states the rule to be: "The provisions in the law, that if a majority of the legal voters in a county shall vote against the sale of intoxicating and brewed liquors, no license shall be granted within the county for the sale thereof, is not an unlawful delegation of power by the Legislature." See also State v. Hoagland, 51 N. J. L., 454; State v. County of Hudson, 52 N. J. L., 398.

New Mexico—In Ex parte Everman, 18 New Mexico, 605, the validity of local option statutes was upheld by the Supreme Court of New Mexico. That court says: The constitutionality of "local option" legislation is no longer an open question in American jurisprudence. While some of the earlier cases, it is true, held such laws unconstitutional and void, because based on a contingency, and, in effect, delegated legislative powers to the people, there is today no State holding such laws invalid or that it is a delegation of legislative authority, with the possible exception of Tennessee (citing Wright v. Cunningham, 115 Tenn., 445), Pennsylvania, Iowa, Indiana and California have all departed from such doctrine as the cases hereafter cited will show. And then follows an extensive citation of authorities, including Ex parte Beck (Cal.), 124 Pac. Rep., 543; Groesch v. State, 42 Ind., 447.

North Carolina—In the case of Cain v. Commissioners, 86 N. C., 8, the Supreme Court of North Carolina passed on the validity of a stock or fence law—to prevent stock from running at large, and in the law it was provided that when a majority of the qualified voters of any county should express themselves as favoring the law, the commissioners should give notice that the law was in force in that county. The Supreme Court upheld the law, holding: "The provision in said Act that it should take effect upon the happening of a contingent event, towit: Upon its being approved by the necessary number of qualified voters, is not a transfer of legislative power to the voters," citing Caldwell v. Justices, 4 Jones Eq. (N. C.), 323. See also Black v. Commissioners, 129 N. C., 121; State v. Matthews, 149 N. C., 546, in which a local option liquor law is sustained.

North Dakota—In Territory v. O'Connor, 5 Dak., 397, the Supreme Court of Dakota held: "That chapter 70, Laws 1887, providing for the prohibition of the sale of intoxicating liquors in the several counties by local option is not subject to the objection that it is a delegation of legislative power. Such a statute is of a police nature, and rightful subject of legislation within the power conferred by the organic law, and may be left to each county to determine when it shall be enforced therein. See also Sobah v. Cormack, 117 N. W. Rep. (N. Dak.), 125.

Ohio—In Gordon v. State, 46 Ohio, 607, the Supreme Court holds: The Ohio local option Act of March 3, 1888, providing that the vote of the township shall determine whether or not the sale of liquor shall be forbidden therein, is not in violation of article 2, section 26, of the Constitution requiring that all laws of a general nature shall have a uniform operation throughout the State, and is not an unlawful delegation of legislative power.

Oklahoma—In Cotteral v. Barker, 126 Pac. Rep., 213, the Supreme Court of Oklahoma holds: "In the case at bar the Legislature has, by general law, provided that cities adopting charters may fix the term of office of the members of the school board; and we do not think this an unconstitutional delegation of legislative power, because the Legislature still exercises a complete control over the public school system of the entire State. This system is in harmony with the general policy of the State relative to municipal charters (submitting to a popular vote of the territory affected) and the larger measure of self-control guaranteed by the laws of our Legislature.

Oregon—In the case of Fouts v. Hood River, 46 Ore., 492, the Supreme Court of Oregon holds: The single question presented in this case is, whether what is known as the "local option Act" is constitutional. It is urged by appellant that it is not, for the reason that by its terms it is made to take effect, if at all, upon the popular vote of the locality or localities within which it is sought to have it applied or become operative. Each elector is to vote a ticket for license or against license. But this is all he is permitted by law to do. He declared no consequences and prescribed no rule resulting from his opinion. Nor does the majority of the votes declare a consequence. The return of a majority is but a mere numerical preponderance of votes, and expressed only the opinion of the greater number of electors upon the expediency or inexpediency of licenses. When this is certified by the return, the Legislature, not the voters, declare it shall (or it shall not) be lawful for any license to issue. Thus it is perfectly manifest this law was not made, pronounced, or ratified by the people. When the law came from the halls of legislation it came a perfect law, mandatory in all its parts, etc., citing many authorities. See also State v. Kline, 90 Ore., 426.

Rhode Island—In State v. Arseno, 29 R. I., 436, the Supreme Court of that State, in passing on a local option barber law, holds: "Nor is it a valid objection that it is a delegation of legislative power to provide that the law shall apply to a given town only upon a vote of its

town council, or that the application of the law in a town shall be left to a vote of the town council and not to the vote of the electors. And it needs no argument to show that the Legislature may constitutionally provide for the exercise of the police power in respect to the subject now under consideration in the same manner in which the police power may be lawfully exercised in respect to the traffic in intoxicating liquors. 3 R. I., 33. See also State v. Nelson, 77 Atl. Rep. (R. I.), 170; Blais v. Franklin, 77 Atl. Rep., 172. See also opinion of Justices, 85 Atl. Rep. (R. I.), 3, in which, among other things, it is tersely stated: "The law-making power of the State recognizes no restraints and is bound by none except such as are imposed by the Constitution. Its object is not to *grant* legislative power, but to *confine* and *restrain* it. Without constitutional limitations the power to make laws would be absolute."

South Carolina—A number of years ago before the "Dispensary Law" of South Carolina was passed the Legislature passed a law prohibiting the issuance of license to sell intoxicating liquors outside of incorporated towns, and in the law provided, upon petition being presented, the council of any such incorporated town an election should be held to determine whether or not licenses should be granted in such incorporated town. It was a local option statute and was upheld by the Supreme Court of South Carolina in Black v. Walker, 23 S. C., 517, and cases there cited. See also Rawl v. McGown, 97 S. C., 1.

South Dakota—The Supreme Court of South Dakota in Ex rel. Crothers v. Barber, 19 S. D., 1, holds: The South Dakota law of 1897, chapter 72, relating to the sale of intoxicating liquors and providing for the submission on petition at the annual election held in any township, town or city, of the question of granting permits to sell at retail, such liquors, and providing that if a majority vote in favor thereof, the corporate authorities shall grant permits for such sale for the ensuing year, and if a majority votes against the issuing of granting permits, no license shall be issued, is not unconstitutional as delegating legislative power to local communities.

Utah—In Peterson v. Peterson et al., 42 Utah, 273, the Supreme Court of that State holds: Counsel contends that section 18 (if the Act which authorizes a vote to be held) is void, because under our Constitution, power to legislate is vested exclusively in the Legislature, and can not be delegated to the people as attempted to be done in said section. It is further insisted that the law is special and not of uniform operation. There is no merit in either of these contentions. The law was complete as a law when it left the hands of the Legislature. It is not unusual for matters relating to local police regulations to be submitted to the voters of particular localities under general laws. To do so is not delegating any legislative functions to the voters. This is clearly explained by the author in Cooley's Con. Lim. (7 ed.), pp. 173, 174, and it is further illustrated and applied under similar statutes in Dudley v. Wolf, 14 Iowa, 228; Davis v. State, 141 Ala., 84; People v. Simon, 176 Ill., 165, and other cases that could be cited.

Vermont—In the case of Bancroft v. Dumas, 21 Vt., 456, the validity of a local option law was in question. The statute of 1846 was passed with a view of conforming the law upon the subject of licenses to what was supposed to be the wishes of the people. The statute provides that the sense of the freeman shall be taken annually upon the subject, and if a majority shall vote no license, then no licenses are to be granted during the year; and if a majority shall vote license in that event the several County Courts are authorized to grant licenses. It is objected to the validity of the law that its validity is made to depend upon the will of the people, expressed at the ballot box, and hence it is urged that it is not a law enacted by the Legislature. Is the law subject to this objection? It has all the forms of a law, and was enacted by the legislative department of the government, but whether it shall be pro- hibition to, or an authority for the granting of licenses, is made to depend upon the expressed will of the people. Can this feature invali- date the law? We are entirely satisfied that the law is subject to none of these objections. The law was complete in itself when passed by the Legislature, and did not require the creative power of the people or anybody to give it validity and force." In State v. Parker, 26 Vt., 354, the opinion in the Bancroft v. Dumas case was approved, and the validity of local option statutes has never been questioned by the courts in Vermont.

Virginia—In Savage v. Commonwealth, 84 Va., 619, the Supreme Court of Virginia in passing on a law of that State, says that the statute provides for submitting the question of liquor license to the qualified voters of the several counties, corporations and magisterial districts, and enacts that if any magisterial district vote against license for the sale of intoxicating liquors therein, then no license shall be granted to any person in such district for the sale of such liquors; but if such district vote in favor of such license then it shall be lawful to sell with license obtained under existing laws. Held, the Act does not dele- gate legislative power vested by the Constitution in the General As- sembly, and is not unconstitutional. See also Willis v. Kalmback, 109 Va., 475.

Washington—Some of the earlier decisions of Washington, when a Territory, are sometimes referred to as holding that "local option stat- utes" are unconstitutional in that such laws are a delegation of legis- lative authority, but when read and analyzed they do not so hold. The Supreme Court of that State in the case of State v. Tausick, 116 Pac. Rep., 631, 35 L. R. A. (N. S.), 802, has put the matter at rest in that State, and specifically holds: "Appellant contends the Act violates section 1, article 2, of the State Constitution, in that it is an unwar- ranted delegation of legislative power. The rule is well established that a statute does not delegate legislative power so long as it is com- plete in itself when it has passed the Legislature and has been approved by the Governor, even though it is left to some local body to determine whether and when it shall go into operation."

In State v. Story, 51 Wash., 630, the Supreme Court of that State

says: "The Act was passed by the Legislature. That authority may say definitely when an Act shall take effect, or it may fix an indefinite time in the future upon the happening of some future event before the 'Act shall take effect. The mere fact that it does not take effect until the contingency arises, does not indicate a delegation of legislative power, even when the contingency depends upon the action of certain persons. In such cases it can not be said that the legislative authority is delegated. The local judgment merely accepts or rejects the operation of the legislative Act. The rule is tersely stated in 8 Cyc., 830, as follows: 'While the legislative body can not delegate the power to legislate, the Legislature may delegate the power to determine some fact or facts upon which the statute makes or intends to make its own action depend.' And this rule is sustained by the great weight of authority." State v. Miller, 72 Wash., 174.

West Virginia—In the case of Ruther v. Sullivan, 25 W. Va., 433, the Supreme Court of that State announces the following as the rule governing in that State: "It will not be questioned that it is entirely competent for the Legislature to provide for taking the vote of the people or any portion of them upon a measure directly affecting them, and if a given number be in favor of its operation, to enact a law therefor carrying it into effect. And there would seem to be but little difference in substance in a reversal of the process by first enacting the law in all its parts but providing its operation is to be suspended until it be ascertained that the requisite number of the people to be affected by it are in favor of its adoption. If the Legislature may make the operation of its Act depend on some contingency thereafter to happen, or may prescribe conditions, it must be for them to judge upon what contingency or upon what condition the Act shall take effect. They must have the power to prescribe any they think proper; and if the condition be that a vote of approval shall first be given by those to be affected by the proposed measure, it is difficult to see why it may be as good and valid as any other condition whatever. There can be no inherent vice in the nature of such condition, which shall seem to defeat the Act, when it would be legal and effective if made to depend upon some other event. To say in such case the Act is made by the voters and not the Legislature is to disregard all proper distinctions, and involves an utter confusion of ideas upon the subject. Whenever the contingency, upon which a law is to take effect, depends upon the action of third persons, it might be said with equal truth that the law was enacted by those persons instead of the Legislature. It is unnecessary to say more. The Act was constitutional."

Wisconsin—In Adams v. Beloit, 105 Wis., 368, in passing on a local option measure, the court says: "A law otherwise unobjectionable is not invalid simply because the power is given to some local officials or body of electors to determine the existence of a fact upon which it shall go into effect in the given locality, if the law itself is a complete law upon the statute books. This is not the delegation of power to make a law, but simply the delegation of power to determine or ascertain some

fact upon which the action of the law, which is complete in itself, is to depend. (State ex rel. Atty. Gen'l v. O'Neill, 24 Wis., 149; Smith v. Janesville, 26 Wis., 291; Slinjer v. Henneman, 38 Wis., 504; Dorling v. Lancashire Ins. Co., 92 Wis., 63; In re North Milwaukee, 93 Wis., 616.) Nor does such option feature make it a special law."

In State v. Frear, 142 Wis., 332, the Supreme Court of. Wisconsin says "the ultimate conclusion reached in the O'Neill case was correct, and that as to matters purely local or municipal the Legislature may enact conditional laws, and refer it to the people locally to decide whether such laws shall become effective in the municipalities in which they reside. The general current of authority elsewhere is to the same effect." State v. Canovan, 155 Wis., 398; State v. Thompson, 149 Wis., 488.

Wyoming—Wyoming, in so far as we have been able to ascertain from an examination of the reports of its courts of final resort, has never had before it the question of whether the Legislature may enact a law giving to the people of the various counties the right to decide by popular vote whether or not they desired to avail themselves of the provisions of the said Act and secure the benefits accruing therefrom, but they have decided that the Legislature may by general law confer upon municipalities, by action of the city council, the right to tax and license liquor dealers and similar occupations, and to regulate them by ordinance, and provide that the city council may determine whether or not license shall issue. (State ex rel. v. City Council, 7 Wyoming, 417.) The laws of that State prohibit license to issue outside of incorporated towns. And in numerous instances have held that conditional legislation is not unconstitutional.

In Arbuckle v. Pflaying, 20 Wyo., 351, the Supreme Court holds that an Act which provides for an inspection, and that upon inspection, finding a condition to exist, to take steps to prevent infectious diseases to prevent its spread, is valid. The court says: "A conferred power of this nature is not inhibited by the Constitution because it is the only practical method by which the State can enforce its police regulations. The Act is continually in force and is not suspended or vitalized by any of the inspectors. It is held not to be a delegation of legislative power to empower the live stock board to determine when a quarantine is necessary and to establish same under the provisions of the law, and declare the quarantine at an end, when the board deems it is no longer necessary." Texas has such a law, and its legality has been sustained, and it is now in force in this State. Such law has not been held to be a delegation of legislative power, nor delegation of authority to suspend a law.

The Constitutions of these various States are practically the same as that of Texas in so far as legislative authority and power is concerned. The powers of government are divided into three departments—legislative, executive and judicial, the legislative being given the law-making power.

The rule in the Federal courts is tersely stated in Weil v. Calhoun, 25 Fed. Rep., 865: "It is competent for the Legislature of a State to

pass a law to take effect only on the happening of a certain event, and an Act prohibiting the sale of spirituous liquors in a State, excepting certain counties from the operation of the Act and providing that the law should only go into effect in any county after the people by popular vote had so decided, is within the legislative discretion and is not delegating the powers of the Legislature to the people of the counties."

In Union Bridge Co. v. United States, 204 U. S., 364, and Marshall Fields Co. v. Clark, 143 U. S., 649, is a review of the holdings of the Supreme Court of the United States, beginning with the opinion of Chief Justice Marshall in Waymen v. Southard, 10 Wheat., 1, down to the present time, and it is shown to be the unbroken rule of decision given in that court, that legislation, to become operative upon the happening of a contingency, or which is to become effective upon the ascertainment of a fact, the mode and method being provided for in the law, is not a delegation of legislative authority and power.

It is thus seen that in every State in the Union with the possible exception of Tennessee, the courts of final resort now hold that a local option law, a law which leaves to the voters of a county, or other subdivision, the question of whether or not they will avail themselves of its provisions, or pass themselves under the operation of the law, is not a delegation of the power and authority of the Legislature either to enact a law or to suspend a law. In Tennessee, in the case of Wright v. Cunningham, 115 Tenn., 445, it was held that the local option law under discussion did not suspend the general law of the State. The court said: "The insistence that the Act violates that section of the Constitution which prohibits the suspension of general laws is a misconception of the meaning of the word 'suspend' as used in the Constitution. The Act, if operative at all, must take effect according to its purport as an amendment of the former Act. In that case it is treated as if incorporated into the body of the original Act, and the two from that time became one Act, citing authorities." So no State supports the contention that "it is a delegation of authority to suspend a law," but the Tennessee court in that case does hold that it is a delegation of power to enact a law, and cites the cases from Iowa, California, New York and Pennsylvania as supporting that contention, which, as we have heretofore shown, have been overruled in the States named, and are no longer followed as announcing the correct rule of law. The Tennessee court also admits that the Legislature may enact laws depending upon a condition or contingency, but says it can not make the vote of those to be affected by the law the contingency. In this contention it stands solitary and alone in this great sisterhood of States. And in Tennessee their later decisions have greatly weakened the force of the opinion in Wright v. Cunningham, if in fact it has not been overruled. In Scott v. Mailer, 124 Tenn., 388, that court held: "While the Legislature can not delegate its power to enact a statute, it can delegate in a statute the power to determine some fact or condition upon which the operation of a statute depends." Citing Samuelson v. State, 116 Tenn., 486, and other cases, including Locke's Appeal, 72

Pa., 491, with approval, and in that case it was held the condition might be that of a vote of the people to be affected by the law. The personnel of the Tennessee court had been materially changed when the latter opinion was rendered, and we feel sure if the question was again presented to it, as at present constituted, it would not follow the opinion in Wright v. Cunningham, supra, but would return to the correct rule as first announced and held in the State of Tennessee in the case of Railway v. County Court of Davidson, in 33 Tenn., 637. In that case, beginning on page 668, is a learned and able discussion of the question, and they there held and said: "That the reference to the people of the various counties to decide by popular vote whether, under the statute, the question of subscription or no subscription does not invalidate the law by bringing it in conflict with the Constitution."

This brings us to the discussion of the decisions of our State, and we will first discuss the two cases cited by our Supreme Court in the majority opinion in Ex parte Mitchell, supra. The case of Brown Cracker Co. v. City of Dallas, 104 Texas, 290, is cited as holding that the Legislature can not delegate the power to suspend a law of the State. (Const., art. 1, sec. 28.) No one questions this rule of law under the Constitution of our State, but does it follow that the pool hall law enacted by the Legislature attempts to delegate this authority on anyone? We do not think so. If there is a suspension of the law, it is the law *passed by the Legislature* that suspends upon the happening of a given contingency, and we do not think anyone can question the right of the Legislature to pass an Act suspending any law. Now what was the question in the Brown Cracker Co. v. Dallas case? The State law prohibits bawdy houses from being run in any part of this State. (Art. 361, P. C.) The City of Dallas (and not the Legislature of Texas) undertook to pass an ordinance permitting bawdy houses to be run in a certain part of the city, designated in the ordinance. The charter granted the City of Dallas specifically provided: "That no ordinance shall be enacted inconsistent with the laws of this State," yet, notwithstanding that specific inhibition contained in its charter, the City of Dallas did attempt to pass an ordinance inconsistent with the laws of the State, and, of course, it was held void. Section 5 of article 11 of the Constitution, provides: "Cities having more than five thousand inhabitants may by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or *any ordinance passed* under said charter, shall contain any provision *inconsistent* with the Constitution of the State, or of the general laws enacted by the Legislature of this State." So the ordinance of the City of Dallas was void under two provisions of the Constitution, and the opinion in the Brown Cracker case was a correct exposition of the law. Suppose, instead of the City of Dallas enacting the ordinance, the Legislature of Texas had passed a general law prohibiting bawdy houses to be run in all parts of the State, and in the Act or in a subsequent Act provided that in incorporated cities and

towns the city council could by ordinance permit such houses to be run in districts in said cities and towns designated by an ordinance of the city. Would any question the authority of the Legislature to pass such a law, or the valadity of the law? We might question their wisdom for so providing, but the courts would be compelled to enforce the law as written by the Legislature. The Brown Cracker Co. case is no authority to hold that the pool hall law is a delegation of power to anyone to suspend a law. The pool hall law is an Act of the Legislature and not an ordinance adopted by any inferior body, and in the Act the Legislature lays down the rule and contingencies under which pool halls shall be licensed or prohibited and authorizes no addition to be made to or no provision to be taken from the law as enacted by any agency or person, or set of persons. While it is true that section 8 of article 7355, levies on every pool and billiard table used for profit an annual occupation tax of $20, since the passage of the Act levying this occupation tax the Legislature has enacted another law—the pool room law—and if there is any conflict between the two laws, this last Act of the Legislature would repeal the former in so far as a conflict should be held to exist between them, it being the last expression of the legislative will. But we do not think either provision repeals the other, or suspends the other provision. As said in Lewis' Sutherland's Statutory Construction: "Where two enactments separately made are read in pari materia they are treated as having formed in the minds of the enacting body parts of a connected whole, though considered by the Legislature at separate dates, and under distinct and varied aspects of the common subject. Such a principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to laws, and connect them in a symmetrical system. Such statutes are taken and construed as one system, and the object is to carry into effect the intention. For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and to be brought in harmony if possible, though they may not refer to each other. Where a statute is made in addition to another statute on the same subject, without repealing any part of the provisions of the other both must be considered together." This has always been the rule in our Supreme Court. Bryan v. Sundberg, 5 Texas, 417; Selman v. Wolf, 27 Texas, 68; Taylor v. Hall, 71 Texas, 213; Cannon v. Vaughan, 12 Texas, 400; Keenan v. Perry, 24 Texas, 253; Scoby v. Sweatt, 28 Texas, 713; Bonner v. Hearn, 75 Texas, 242; Duncan v. Taylor, 62 Texas, 649; Kampman v. Tarver, 87 Texas, 491. It has also been the rule in this court: Mock v. State, 11 Texas Crim. App., 58; Ex parte Schmidt, 2 Texas Crim. App., 202; Cain v. State, 20 Texas Crim. App., 362. See also Black on Interpretation of Laws, sec. 86, and authorities cited.

In Potter's Dwaris Statutes, page 189, it is said: "If one statute prohibits doing a thing, and another statute be afterwards made whereby a forfeiture is inflicted upon the person doing the thing, both are considered as one statute." See also Endlich on Interpretation of Statutes, sec. 183.

Now, suppose both· section 8 of article 7355 of the pool hall law had been enacted at the same time and as a part of the same Act, and read: There shall be levied and collected from every person pursuing the occupation of running a pool table the sum of $20, and then followed this up with the provisions of chapter 74 of the Acts of the Thirty-third Legislature. Would there or could there have been any contention that one part of the Act suspended or repealed the other part? We do not think so, and all the authorities hold, that as they both deal with pool halls (the same subject) we shall read them together as a connected whole, and give force to the legislative intent. This is a sane, common-sense construction of the laws on this subject, and one upheld by all the text writers, and by the decisions of our Supreme Court, and of this court, and by the decisions of all the States from which excerpts are hereinbefore copied. None of them ever held that a local option law suspended a license law, except Wall v. State, supra, which was specifically overruled in the case of Ex parte Beck by the California Supreme Court.

The only other case cited in the opinion of our Supreme Court in the Mitchell case is that of Swisher v. State, 17 Texas, 441, which holds that the Legislature can not delegate its power to enact laws. No one questions that rule of law. In the Swisher case it is said: "The mode in which Acts of the Legislature are to become laws is distinctly pointed out by our Constitution. After an Act has passed both houses of the Legislature it must be signed by the Speaker of the House and President of the Senate. It must receive the approval of the Governor. It is then the law." Now in what respect does the pool hall law fail to measure up to those requirements? Not one. Each and every one of those steps were fully complied with, and the law printed in the statute books of our State. In that case the ·court also said: "The question presented is not now of' general interest, as the Act has been repealed. We shall not, therefore, give to it that elaborate *investigation* that we would have felt called upon to bestow upon it. . . . So much has been said and written about this Act of the Legislature that it has become familiar to everybody, especially the profession. We shall, therefore, omit its insertion here. It is known that the prominent objection to its constitutionality is, *that it is referred to the voters for its ratification before it becomes a law."*

If those were the terms of that Act we might agree with the holding that it was unconstitutional, but we have no such Act and· no such provision in the pool hall law. The pool hall law is referred to no one to determine whether it shall become law, but the Legislature enacted its provisions as the law of the land, and it remains the law whether a vote is ever held under its provisions or not. The rights and privileges given by this law remain and can be taken advantage of whenever its provisions are complied with. If it is claimed the Act being passed on in the Swisher case was "not referred to the voters for ratification before it became a law," then these judges misconceived its provisions, doubtless by reason of the fact that it had been repealed,

and as they say, it was not necessary to give to it elaborate investigation. But should it be contended that the court in that opinion intended to hold that a law which left it optional on the territory to be affected whether or not its provisions would be taken advantage of, was a reference for ratification, then our Supreme Court has held to the contrary in a number of cases since the rendition of that opinion. In the brief filed by the Attorney General in that case he cited cases decided by the courts of New York, Pennsylvania, Delaware and Michigan. It is enough to say that no such rule of law prevails in either of those States at this time, but in every instance where it had been held that a local option law was a delegation of power to enact a law, such holding and each opinion cited has been overruled by the courts of the States named, and it is now the rule in these States, as well as all other States in this Union, that a law enacted by the Legislature, complete in all its details, simply giving, by the terms of the law, an option to the various counties, or the people of the designated districts, the privilege of determining whether or not they will pass themselves under the provisions of the law, is not a delegation of legislative power and authority, and is violative of no provision of the Constitution. But as said in the Ex parte Francis case by this court, if the construction to be given the Swisher case is that it was then held it was a delegation of legislative power for the law to leave it optional whether or not its provisions and privileges would be taken advantage of, we would not follow it, and there gave our reasons for so holding, and our Supreme Court, in all the opinions rendered by it (prior to the opinion in the Ex parte Mitchell case) had repudiated such a rule of construction.

In the case of San Antonio v. Jones, 28 Texas, 19, our Supreme Court held it was not a delegation of legislative authority and power to leave it optional with the voters of the various counties to decide by ballot whether or not they would vote a bonus under the law enacted by the Legislature.

In Stanfield v. State, 83 Texas, 317, our Supreme Court held it was not a delegation of legislative power to leave it optional with the counties whether or not they would avail themselves of the provisions of a law, and in the law also to provide that if after having passed themselves under it, if not satisfied with the workings of the law, to pass themselves from under its provisions.

In Johnson v. Martin, 75 Texas, 33, in passing on a statute which gave the people an option, the court held: "The privilege of the electors of the district to be affected by a law to say whether they will accept its provisions, the law giving them the right to accept or reject, is now generally permitted, and regarded as constitutional, and is not a delegation of legislative power." And in this case expressly, by the opinion rendered, show they will not follow the Swisher case, citing it.

In Werner v. City of Galveston, 72 Texas, 27, our Supreme Court was passing on an Act of the Legislature which submitted to a vote of the people of the various cities the option of whether or not they would under the provisions of a law, take charge of their public schools, and

held it not to be a delegation of legislative power, and that such a law violated no provision of the Constitution.

In Orrick v. City of Fort Worth, 114 S. W. Rep., 681, the Court of Civil Appeals, in an opinion by Chief Justice Conner, held that an Act of the Legislature which submitted to the people whether or not they would accept the provisions of the law was not a delegation of legislative authority and power. In this case our Supreme Court refused a writ of error, thus affirming the opinion of the Court of Civil Appeals.

Many other cases decided by our Supreme Court so holding might be referred to, but we will not further do so, except to refer to the opinion of our Court of Civil Appeals in the case of Roper & Gilley v. Lumpkins, 163 S. W. Rep., 110, in which the validity of the present pool hall law is discussed and upheld, the court saying: "It can be safely said that the Act in no respect attempts to confer upon the electorate the law-making power of the Legislature. Every detail of the Act is complete, and the people may in no respect add to or take from its provisions, but are merely given the right to vote upon whether the law, as passed, shall be put in operation in the subdivisions named. The Act, in our opinion, is dissimilar to the law construed in State v. Swisher, 17 Texas, 441, where the law was held to be unconstitutional, on the ground that it left to the voters the determination of whether or not licenses should be issued to liquor dealers. Justice Lipscomb, in writing the opinion, said the principal objection to the Act was that it was referred to the voters for ratification before it became a law. The law under discussion is not subject to that objection, since the right to prohibit the business is complete by the Act itself, and there is only left to the determination of the people whether they will exercise the power conferred. The vesting of such discretion in the people is held not to be a delegation of the law-making power."

Thus we see that the opinions of the courts of last resort of every State in the Union (unless it be that of Tennessee) hold that a law which leaves it to the option of the people of the counties, as does our pool hall law, to determine whether or not they will avail themselves of its provisions is not a delegation of legislative power to enact a law and is not a delegation of power to suspend a general law of the State. And the decisions of our own Supreme Court are in thorough harmony with those decisions (at least since the rendition of the opinion in the Swisher case) until the opinion was rendered in Ex parte Mitchell. The opinion in that case is not only against the great weight of authority, but is against the rule of law as announced by all the eminent text writers, and against the rule of law as announced by the courts of last resort in every State in the Union, unless it be the Tennessee court, and as we have shown, the opinions of that court are in conflict. We have been told that Judges Lipscomb, Wheeler and Hemphill were eminent and able lawyers. This we concede, but it is apparent by their opinion they were not passing on what is termed a "local option statute" like our pool hall law, but if they had been they were no more eminent

nor able men than Judges Moore, Roberts, Coke, Willie, Stayton, Henry, Brown, Gaines, Williams and a number of other of our judges who have passed on the questions involved, and held them violative of no provision of our Constitution, and that such laws do not delegate legislative authority and power.

We should advert occasionally to the foundation of our government and the principles underlying it. When we were but colonies of England, the rule was that the king or those in authority were sovereign, and in them inhered all authority and power. But when our forefathers declared their independence and won their freedom, all authority and power theretofore invested in the king passed to the citizens of the colonies, and they became and still are the sovereign power. Each of the then thirteen colonies, or States, was independent of the other, and the people of each State in their collective capacity held the supreme power. They formed a union to protect themselves, and ceded certain powers in the Federal Constitution to the union government. All power and authority not ceded was reserved to the States and the citizens thereof. The Federal Congress can only pass such laws as the grant of power to the Union authorizes, but a Constitution of a State is not a delegation of authority and power. Authority and power to make laws inhered in the States, and the people thereof. A legislative body is the representative of this sovereignty, and their authority and power is as broad and as comprehensive as was that of the king in olden times, except in regard to such matters as were ceded to the Federal government, and except such limitations as the people of each State have seen proper to place upon their representatives in their State Constitution. If the people have placed no inhibition in their State Constitution, then the Legislature can act, and it is sovereignty speaking through their chosen representatives. Courts have no right to strike down laws enacted by the Legislature, no matter how unwise they may deem them, unless an inhibition can be found in the Constitution. We find no provision in our Constitution which inhibits the Legislature from passing a general law under and by virtue of which the people of the various counties may avail themselves of rights and privileges granted by the law. There is no such inhibition in the Constitution, of this State, and we can not agree, by strained construction, to engraft such an inhibition. We entertain great respect for the ability of the men who rendered the majority opinion in Ex parte Mitchell, as well as the ability of Judge Davidson, who entered a dissent in Ex parte Francis, and for their legal attainments, but when we ascertain that their view of the law on any question is not only contrary to the opinion formed by us after mature thought and study, but is also in direct conflict with the opinions of the able men who compose the courts of last resort in every State in this Union, and in direct conflict with the rule of law as announced by such eminent law text-book writers as Judge Cooley, in his work on Constitutional Limitations; Mr. Black, in his works on Interpretation of Laws and Intoxicating Liquors; Mr. Freund, in his work on Police Power; Lewis' Sutherland on Statutory Con-

struction; Joyce, on Intoxicating Liquors, and other eminent men we might mention, we can not follow them in giving a strained construction to the Constitution, and must declare the law as we believe it to be, and as it is held to be not only by all the eminent law text writers of this day and time, but by all the courts of last resort in all the States in the Union.

The Legislature has made a violation of the law a criminal offense, and the Constitution of this State places in this court, and not the Supreme Court, the supreme and final jurisdiction in all criminal cases. It is to be regretted that the two courts of final resort have arrived at different conclusions as to the validity of this law. Had the Legislature made a violation of this law a civil case, as final jurisdiction in civil matters was given to our Supreme Court, we would bow to their opinion, but the Legislature did not see proper to do this, but instead made it a criminal offense, of which this court has final and exclusive jurisdiction. It was formerly held by our Supreme Court that they would follow the opinion of this court in matters of criminal law. In Commissioners Court v. Beall, 98 Texas, 104, our Supreme Court, speaking through Judge Gaines, held:

"We are of opinion that the questions certified belong to a class which fall within the peculiar jurisdiction of the Court of Criminal Appeals and in which this court should follow the decisions of that court. Every law must have its sanction; that is to say, its means of enforcement. Without such it can hardly be deemed a law. 2 Bouv. Law Dict., Rawle's ed., p. 145. The author cited says: 'Sanctions are of two kinds, those which redress civil injuries, called civil sanctions, and those which punish crimes, called penal sanctions.' Id., 953. The local option laws of this State depend wholly for their enforcement upon the infliction of the penalties prescribed by the statute through the procedure provided for that purpose by our Code of Criminal Procedure. The prosecutions thereunder must be instituted and tried in the courts having criminal jurisdiction. Therefore we are of opinion that our local option statutes are strictly and essentially criminal laws, and as such primarily subject to the decisions of the criminal courts as to their validity and construction. Appeals lie in criminal cases to the Court of Criminal Appeals as the court of last resort. Their decisions are final upon the questions determined by them, and settle the law in purely criminal matters at least as to all inferior courts over which they exercise appellate jurisdiction. In like manner, the decision of the Supreme Court is final and authoritative over questions not involving the criminal laws. Such is the constitutional prerogative of the two courts. Neither is in any manner subordinate to the other.

"Yet there are criminal cases which may incidentally involve a question of civil law, and civil cases in which in like manner points of criminal law call for solution. For example, in a prosecution for theft, a question of the title to property may be raised; so in a suit to recover damages for false imprisonment, a question may arise as to the right

to make an arrest under the provisions of our Code of Criminal. Procedure, which is a question of criminal law.

"Such being the jurisdiction of the two courts of last resort, and since under the rule of the common law the decisions of such courts are authoritative and controlling upon other courts, it occurs to us that when the amended judiciary article of our Constitution was framed and adopted—separating, as it does, the jurisdiction of the two courts of final resort by giving to the one jurisdiction of criminal cases only and to the other civil jurisdiction alone—it was not contemplated that there would result a conflict of decision in the two courts which there was no provision for reconciling. On the contrary, we are of opinion that it was considered, that, upon questions of criminal law which might arise in the Supreme Court, that court would bow to the decisions of the Court of Criminal Appeals, and that, upon those of civil law, the latter would accept the rulings of the Supreme Court. We think we may safely say that it has been the rule of this court, ever since the adoption of that amendment, to follow the construction placed upon the statutes embraced in our Penal Code and Code of Criminal Procedure by the Court of Criminal Appeals. The rule was followed in the case of Green v. Southard, 94 Texas, 470. In the opinion in that case we said: 'This being the construction placed upon a criminal statute by the court of last resort in criminal cases, the rule is binding authority upon us and disposes of the question so far as it is affected by the irregularity of the license.' ".

As long as both courts followed that rule of law there could be no conflict. But our Supreme Court seems to have departed from that rule in a case wherein they were authorized to issue an injunction in aid of the enforcement of the law by the criminal courts, and it is a matter about which we have no right to and do not complain. We merely call attention to it so that the Legislature may take notice of the matter and provide ways and means by which such conflicts may in future be avoided by providing for a tribunal whose adjudication will be final.

But, this being a criminal case, we feel that the Constitution has placed upon us the imperative duty to declare the law as we believe it to be. As said by Judge Davidson in Ex parte Combes, 38 Texas Crim. Rep., 648: "It is to be regretted that courts of last resort, whose adjudications are final in matters coming before them, should disagree as to what the law is, or should be, in the same character of cases, or upon the same legal propositions. Were this a matter of personal discretion instead of one of high public duty, we might perhaps be justified in yielding our views, but under our Constitution, this court was created with final appellate jurisdiction in all criminal appeals, hence we can not, if we felt inclined to do so, shirk the responsibility imposed by the Constitution and laws of this State." When the matter comes before our Supreme Court again, if it does, we think that, taking into consideration the far-reaching effect of the decision, the court will give it most careful and mature thought, and

if so, we are inclined to believe and hope it will not adhere to its decision when it is ascertained that it is not only against the great weight of authority, but the practical unanimous opinion of the great jurists who occupy positions on the courts of final resort in all the States in this Union. If the opinion rendered by them in Ex parte Mitchell is to be adhered to by that court, then many of the laws on our statute books must fall. Our statutes authorize the citizens of towns and villages to vote on whether or not they will accept the provisions of the municipal corporation Act, and if a majority vote to place themselves thereunder, then all the provisions of the law apply; it authorizes a town or village, when having a sufficient population, to vote on whether or not they will accept the provisions of the statute relating to cities. Our statute authorizes a town, incorporated under the general incorporation Act, to vote on whether or not they will accept the provisions of law providing for a commission form of government. Our incorporation laws leave it optional with the citizens to decide whether they will accept the provisions of the law, and incorporate. If they do, then they are bound by the law. Many instances could be cited of "option statutes," and under some of them great property rights have been acquired, bonds, etc., have been issued by municipalities, and if the Legislature can not pass a statute and leave it optional whether or not those to be affected by it will accept its provisions, then all of our option statutes must be declared invalid, and great injury will be done. So great an injury should not be brought about by a court decision, when nearly all of the eminent jurists of this day and time entertain and express and hold that an option statute is valid. It is a rule, not only in this court and the Supreme Court, but one announced by all law writers, that if there is doubt as to the constitutionality of the law, the doubt must be solved in favor of its validity. It is only where the law is manifestly in violation of some provision of the Constitution that a court is authorized to declare it void. (Lytle v. Halff, 75 Texas, 128; State v. McAlister, 88 Texas, 287, and cases cited; Cooley's Const. Lim., p. 216.) We sincerely feel and believe that when our Supreme Court reads the opinions of the various courts of final resort in all other States in this Union, and the views expressed by the eminent text writers of today, they will have raised in their minds a serious doubt of the correctness of the view expressed by them in Ex parte Mitchell, if in fact the court is not convinced it was in error. If the able opinions cited in this opinion do raise a doubt in their mind, we feel sure they will not hesitate to so declare when an occasion arises for them to do so. At least, entertaining the views we do, our duty is plain, and we uphold the validity of the pool hall law. It neither delegates the power to enact a law, nor the authority to suspend a law. It is an Act complete in and of itself; and whatever results flow from taking advantage of its provisions, the law decrees, and it alone, and we adhere to the opinion in Ex parte Francis, 72 Texas Crim. Rep., 304.

The relator is remanded.            *Relator remanded to custody.*

November 24, 1915.

DAVIDSON, JUDGE (dissenting).—It is not my purpose to review the opinions and extensive quotations therefrom found in the majority opinion. These cases are, in the main, from other States, and relate largely to legislative authority over municipal corporations, and the extent of such authority or policies in those States in regard also to the liquor traffic as developed under their constitutions and jurisprudence. For instance, take Ex parte Beck, 162 Cal., 701, so extensively quoted from and relied on by majority opinion. Beck was charged with conducting a retail liquor saloon in the town of Paso Robles, "where alcoholic liquors were not permitted to be sold, it being an incorporated city and 'no license territory,' he not being a licensed pharmacist." Quoting from that opinion, the court thus states the case: "The question presented by this proceeding is the constitutionality of an Act of the Legislature generally known as the 'Local Option Act,' approved April 4, 1911 (Stats. 1911, p. 599), with reference specially to cities and towns organized and existing under the Municipal Corporation Act, of which the City of Paso Robles is one." Thus it will be seen that the liquor question and municipal authority are concentrated in that case. The Beck case is erroneously relied on to sustain the proposition that in Texas a city may set aside a general State law. In our Constitution (art. 16, sec. 20) the people expressly reserved to themselves the power by "local option" to control the liquor question whether it be in a county, city or town, so that no question of delegation of power could possibly arise. In express terms therein the inherent power of the people withheld and retained this power in themselves, and article 11, section 5, with reference to cities and towns, expressly provides, "that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of this State." The total inapplicability of the Beck case to the question in this case is plainly apparent therefor in view of these provisions of our Constitution. I do not purpose to discuss those cases further. Those decisions are of but little weight and less value in Texas in view of the fact that all these matters are controlled by the provisions of the Texas Constitution. The Constitution must of necessity be of controlling authority where it speaks. So far as this case is concerned, some of these provisions are operative only through local option elections such as stock laws, some bond and tax matters, and others which pertain to charters of cities and towns as is evidenced by an inspection of article 11, section 5, of the Texas Constitution. This last section provides that inhabitants of each municipal corporation may do certain things by local option methods, but these are expressly controlled by a provision in the same section of the Constitution, which declares that "No charter or any ordinance passed under such charter shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of the State," etc. These peremptorily and

conclusively dispose of all the cases cited or quoted by the majority
holding that the referendum election can otherwise impinge or set
aside or be in conflict with a *general State law in Texas,* even if it be
conceded that the cases cited by the prevailing opinion so hold.  The
Constitution also provides for referendum elections to remove county
seats from one point to another point in the same county.  Article 9,
section 2, State Constitution.  There may be other instances set up in
the Constitution where local option elections are authorized.  The most
notable are those in regard to the liquor traffic, bond issues and tax
matters as specified, as well as stock running at large.  These are up-
held with us because specially authorized and demanded by the Con-
stitution.  Cases from other States are unnecessary and valueless under
such circumstances, and, therefore, uselessly cited.  Such quotations do
not add strength to the majority opinion and are of no value except
as to space and quantity.  Our Constitution speaks for itself and voices
the will and power of our people to be as expressed by them in their
organic law.  Decisions of other States can not add to nor detract
from the provisions of the Constitution of Texas.  Our own courts are
not empowered to so decide.  We, therefore, have two broad and dis-
tinctive classes of legislation; one is general, and may be denominated
State laws; the other, local or local option laws.  The general laws
apply as a rule to the State at large, while the other applies to local
or derivative creations of the State.  Local option laws are exceptions
and supersede laws in conflict with them when voted into operation
within the given or authorized community.  Where authorized by the
Constitution, these local option laws suspend, annul or abrogate for
the time being the general laws of the State, where the general law
is in conflict with the local option law, except as provided in article 11,
section 5, supra.  This is fixed definitely by the Constitution itself
and all the decisions of Texas so hold, so far as I am aware.  If the
constitutionally authorized local option law goes into effect, as pro-
vided, it suspends and supersedes all laws in conflict with it during its
existence.  This local option law has the same effect as the Constitu-
tion itself, in that territory, because the people so ordained in the
organic law, and it is, therefore, placed beyond legislative power to
control, suspend or annul, or to add to or detract from such local
option law after once voted into existence in the given territory.  Lewis
v. State, 58 Texas Crim. Rep., 351; Dawson v. State, 25 Texas Crim.
App., 670; Robinson v. State, 26 Texas Crim. App., 82; Ex parte Cox,
28 Texas Crim. App., 537; Ex parte Banes, 39 Texas Crim. Rep., 62;
Aaron v. State, 34 Texas Crim. Rep., 103; Adams v. Kelly, 44 S. W.
Rep., 529; Robertson v. State, 5 Texas Crim. App., 155; Lynn v. State,
19 Texas Crim. App., 293.  Wherever the provisions of such local
option law have been adopted, including specially the punishment, it
will remain inviolable as adopted until the same vote which adopted
it shall reject it and accept by another vote the new provisions of the
Act or abolish it.  These constitutional provisions ordained the only
authority to suspend or vacate the operation of general or State laws.

There is no authority in Texas to otherwise suspend general laws except by the Legislature itself. Article 1, section 28, Constitution, which reads as follows: "No power of suspending laws in this State shall be exercised except by the Legislature." In all prior constitutions until 1874 this section was in the following language: "No power of suspending laws in this State shall be exercised except by the Legislature or its authority." In 1874 this section was by a vote of the people amended so as to expressly prohibit the Legislature from granting any authority to any person or body of men to suspend laws. It became, therefore, absolutely necessary in order to avoid this section and its commanding influence that the Constitution itself should specifically provide otherwise with reference to local option laws. The reason and the facts incident to and which brought about this amendment are as historical as are those which Texas history manifests of the strenuous times immediately following the Civil War and reconstruction days. By the decision of the majority of this court in the instant case that amendment is practically disregarded, if not destroyed, and legislative authority to others to suspend State laws by constructions is upheld in the face of these plain provisions of the organic law. It took these provisions in regard to local option matters to authorize the existence of such local option laws. They had no place and could have none in Texas without this express authority by the ordained organic law. To emphasize the force and effect of the above mentioned amended section and to eliminate all rules of interpretation and construction by courts or other departments of the government, "the inherent power of the people" ordained in section 29 of the same Bill of Rights that "to guard against transgressions of the high power herein delegated we declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void." The local option phases of the Constitution may be regarded as a withdrawal by the people of the force and effect of section 28, article 1, above quoted, in so far as it applies to such laws. Under those local option laws the people reserved to themselves the right to suspend by their own vote the force and effect of general laws when in conflict with their favorable vote in regard to such local option laws. Language could not be clearer or more easily understood than that contained in the section quoted. These matters can not be evaded and set at naught by casuistry or coined rules of interpretation or construction. Section 29 of the Constitution above quoted absolutely interdicts all rules of construction or interpretation which interferes with these commands of the Constitution. Technicalities can not overthrow the Constitution, not even at the hands of courts. The Legislature can not delegate its delegated authority. Whatever of delegated authority is expressed in the Constitution must of necessity remain as specified. Such delegation is incapable of being redelegated. The authority provided in the Constitution for local option laws and their requirements at the hands of the Legislature to provide suitable rules and procedure

to enforce these local option laws is not a delegation of power to that body. It emphasizes the fact that power can not be redelegated by the Legislature, and that such power was not delegated to the legislative body, but reserved by the people in themselves. It is a command to the Legislature to do these things, the people reserving to themselves expressly and exclusively the right to place such laws into operation and expressly excludes that power from the Legislature. It is, therefore, not a delegation to but a reservation of power from and a limitation upon the Legislature. The Legislature is required to pass these laws subject only to the approval of the vote of the designated divisions or subdivisions of the State. Whatever of delegation to the Legislature is granted is to be found in the Constitution and limited, and goes to the extent of requiring the Legislature to pass laws to enable voters to put such laws into operation. This authorizes only the people to vitalize such local option laws. The power is not only not granted to the Legislature but is *expressly* withheld. In other words, it is a reservation by the people to themselves of the power to vitalize such laws. It is not a delegation of authority to the Legislature to do so. It is an interdiction of power. It would follow, then, as a matter of course, that any referendum not authorized by the Constitution would be void, if these provisions of the Constitution are to be observed. It does not belong to any or all departments of government to say that any constitutional provision shall or can be disobeyed, ignored or destroyed. Our people ordaining the Constitution saw proper to write as they did write, and this is binding completely on our people and all the departments of government until the Constitution has been changed by the inherent power of the people by amendment as provided in article 17 of the Constitution. The people may change a Constitution or make a new one, but no other authority can do so. The Constitution in a sense is itself a referendum organic law and can not be changed or modified except by a direct vote of the people and of the vote of the entire people of Texas. Same authority. This is the scope of the referendum so far as it applies to the Constitution, or any changes to be had in it. No subdivision of Texas can amend the Constitution but it takes a vote of the entire State to do so. A general law, therefore, is not and can not be the subject of a referendum. Nor can any law be in Texas except where specially authorized by the provisions of the Constitution.

Again, I may repeat, there is to be observed a wide difference between general laws and local option laws. The general law can only be passed and vitalized by the legislative body. The local option law can only be vitalized by a vote of the people of the designated territory. The initiative and referendum are not in vogue in Texas as to general laws, nor can be unless the Constitution be amended as to so authorize. The pool hall Act is, in a sense, a general law, and is so held to be by Judge Harper. It is also a referendum Act and can operate under referendum elections. In fact, that it is a general law forms the basis of his opinion and conclusion. It is not a local option law, and, indeed,

can not be legally, as there is no constitutional warrant for its enactment as such a measure. Inasmuch as local option laws are provided by the Constitution, it follows that, if put into operation, they succeed all laws in conflict therewith. All the authorities in Texas so hold. This being true, when voted into operation they suspend and annul all laws in conflict with their provisions until the local option law is repealed or set aside at a subsequent election by a vote of the same people in the same territory who first placed it into operation. It is sacred from legislative repeal and invasion. Cases already cited settle this question. *If such authority is not found in the Constitution to enact local option laws, it would seem to follow that if they are constitutional as asserted by the majority, then such laws would become amendments to the State Constitution operative only in a given or particular locality* by the vote of such locality, and would, therefore, be binding as an amendment to the Constitution, in such territory, but only in such territory. It would not operate elsewhere and could not. There would be as many amendments, therefore, as the number of localities so voting, and each subject to abolition at the pleasure of each locality as the popular fancy dictates. Wherever the people have reserved the power to themselves to put into operation a law, whether it be the Constitution itself or some law provided for in the Constitution, it becomes as binding as the provisions of the Constitution itself, and having been passed as provided, it is safe from interference from any source except by a vote of the people. This would, therefore, clearly violate article 17 of the Constitution by the terms of which alone the Constitution can be amended, and this *expressly so only by a vote of the entire State.* The Constitution can not be amended by a vote of the justice precincts, counties, cities or towns, nor can these subdivisions amend, change or alter the law unless the Constitution expressly so authorizes. Elliott v. State, 44 Texas Crim. Rep., 575; Ex parte Pollard, 51 Texas Crim. Rep., 488; Ex parte Fields, 86 S. W. Rep., 1022; Harris' Ann. Const., p. 56 et seq., for collation of cases. Some of the other cases have already been cited.

If the pool hall law is constitutional, there must be specific power somewhere to be found which authorizes its creation and existence, and this must be found in the Constitution itself. If that power be found in the Constitution, then a favorable action upon the law by a vote of the people would be valid and necessarily would suspend all conflicting laws. If no such authority be found specially, then it must be relegated to the general power of the Legislature. If that body can so enact constitutionally such laws, these laws would necessarily suspend all other State laws inconsistent therewith without resort to referendum elections. It would also necessarily follow that these laws would be as binding as the Constitution itself, and irrepealable except by another vote in the same territory where enacted or vitalized. In each of such instances in such included territory there would be a different Constitution operative from that in all other precincts and portions of the State not so affected—not by the provisions of the Constitution itself

but by a general law of the Legislature. Such a proposition would be a legal anomaly, to say the least of it, and carries with it its own refutation. Harris' Ann. Const., pp. 209 to 212. In McDonald v. Denton, 132 S. W. Rep., 823, it was held that the Legislature alone has power to suspend the operation of general laws, and in exercising this power must make its suspension general but can not suspend general laws for individual cases or for particular localities, nor delegate such authority to local divisions to suspend such laws. Carefully reviewing this subject a great writer thus wrote and clearly states the rule: "If, however, no special authorization to submit a subject to the citizens is contained in the Constitution, the Legislature of the State is without power to call for a referendum on general State laws. To the Legislature the people delegated the law-making power, and it is not competent for it to redelegate its authority to any other body, nor even to pass it back to the people themselves. This is a well settled principle in American public law." If the pool hall law be a law at all, it is of a general nature to be made applicable to different localities by a vote of the people in those localities. In fact, its operation would seem to be an amendment to the Constitution applicable only to a given territory where the people so vote and this in the face of article 17 of the Constitution, as well as article 1, sections 28 and 29.

Again, it has been said, "As to the constitutionality or unconstitutionality of law-making by popular vote in and for States, excepting laws for, counties, cities and local districts, there is today little difference of opinion. The general principle that a body acting under delegated authority can not redelegate its authority to some other person or body, is a well settled point in American law. Delegata potestas non potest delegari is a rule, the virtue of which no one disputes." Mr. Cooley says: "Where the sovereign power of the State has located the authority, there it must remain, and by constitutional agency alone the law must be made until the Constitution itself is changed. The power to whose judgment, wisdom and patriotism this high prerogative has been entrusted can not redeem itself of the responsibility by choosing other agencies, nor can it substitute the judgment, wisdom and patriotism of any other body for those to whom alone the people have seen fit to confide this sovereign trust." Constitutional Limitations, p. 137. "No power goes out of the State except by delegation. All power belongs to the State as much after delegation as before, and that delegated power must necessarily be used for the State by her substitutes and agents." Delegating sovereignty would be as manifest a solecism as delegating ownership to an agent, so in the latter case the agent becomes owner, as in the former the representation becomes sovereign, both cases being alienations or abdications unknown to legal or constitutional history. Delegation of sovereignty to a creature is an absurdity, only equalled by the absurdity of the transfer of allegiance. If sovereignty is transferable to the Legislature, the allegiance of the citizenship is equally transferable to the same body.

The basis of Judge Harper's opinion is that this has been changed

by recent decisions and to sustain himself quotes extensively from the decisions of appellate courts of other States. I believe that the opinion in the instant case, as well as the majority opinion in Ex parte Francis, is in conflict with the State Constitution and the entire jurisprudence of Texas. I do not think, however, the authorities cited by Judge Harper sustain his statement that the recent decisions go to the extent of holding that legislative authority can supersede constitutional provisions, nor do I believe these decisions held or intend to hold, and were not so written. Those decisions would hardly assert the proposition that a general law of the State can be superseded by local option laws, *unless by express constitutional authority,* whether those local laws be by local option methods or by city ordinances. In any event and however done, if legal, the local law would become superior to the general law and *necessarily in conflict.* One law or the other must be the superior. The Legislature is, therefore, without authority to call for the referendum of general State laws unless authority be expressly granted in the Constitution. This was announced in Texas as early as the Swisher case, 17 Texas, 441, and is still the rule as announced by the Supreme Court in the recent case of Ex parte Mitchell, 177 S. W. Rep., 953. Judge Harper's statement is to the effect that the Swisher case has been overruled. I can not agree with him on this statement unless it be by some recent decisions by the majority of the Court of Criminal Appeals, and it ought not to be held that the Court of Criminal Appeals, or a majority of it, has authority to overrule opinions of the Supreme Court. The Court of Criminal Appeals, as a court, or as majority or minority of the court, may take issue with the Supreme Court as to legal conclusions, but the Court of Criminal Appeals has no authority for that reason to overrule a decision of the Supreme Court. The Constitution has never invested the Court of Criminal Appeals with such authority, and my brethren seem to have recognized this very emphatically in the recent cases of Ex parte Zaccaro, 72 Texas Crim. Rep., 214, and Ex parte Mussett, 72 Texas Crim. Rep., 487. As late as last June the Supreme Court of this State reasserted the doctrine of the Swisher case. So we have that august body affirming and reaffirming the doctrine of the Swisher case from the time of its rendition to the present time. The Court of Criminal Appeals in Massey's case, 49 Texas Crim. Rep., 60, adhered to the doctrine laid down in the Swisher case and cited it with approval. Again, the same doctrine and the same case was endorsed by this court in Ex parte Farnsworth as late as 61 Texas Crim. Rep., at page 346. So this court has not only not undertaken to overrule the Supreme Court on this proposition, but as late as the Farnsworth case expressly gave it its sanction and endorsement. In the Farnsworth case this language was used: "It is equally certain that the people can not be reinvested by the Legislature with the functions of legislation conferred by them on a department of government, nor can the Legislature render the enactment of a law dependent upon the acceptance by the people by popular vote." "This inability arises no less from the joint principle

applicable to every delegated authority requiring knowledge, discretion and rectitude in its exercise than from the positive provisions of the Constitution itself." Same case. See also cases cited in the Farnsworth case at page 346. The court rendering the opinion in the Farnsworth case was composed of the same incumbents as now occupy that bench. That opinion was rendered as late as March, 1911. In that case the Swisher case was relied upon by this court as announcing the correct rule, and as the law of Texas. The difference between local and general laws on this question is and has been definitely recognized in all Texas jurisprudence until the instant case and Ex parte Francis. The instant case and the opinion in the Ex parte Francis case seem to have confused these questions and made them interchangeable and applicable as well to general as to local option laws. The difference between these propositions was well recognized in Werner v. Galveston, 72 Texas, 27. In that case Judge Gaines, for the court, said: "It is a well settled principle that the Legislature can not delegate its authority to make laws by submitting the question of their enactment to a popular vote," etc. Continuing that opinion recognizing this distinction he says: "But it does not follow from this that the Legislature has no authority to confer a power upon a municipal corporation and to authorize its acceptance or rejection by the municipality according to the will of the voters as expressed at the ballot box." Since that case the Constitution, article 11, section 5, has definitely settled the question. Any legislative Act which seeks to authorize the suspension of a general law is evasive of public duty and responsibility and the trust confided to the legislative body. It is void and of no effect. And it has occurred to me that such proposition can only be found in and based upon fear of public opinion. Afraid of responsibility in discharge of trusted duty and criticism that might follow, the Legislature says to the people: "We will refer this question to you. You elected us and we represent you. In this matter we will submit the law directly to you and if you are in favor of it you may pass it. If, however, you are opposed to it you will reject it. In any event you can not blame us." This quotation does not manifest decided evidence of Spartan courage. Such line of conduct and such shirking of duty on the burning ship would not have transmitted to history the heroic tragedy of Cassibianca, nor would the history of the stoic bravery of the Roman soldier have illumined the pages of the "Last Days of Pompeii." It may be the voice of Jacob, but it is the hand of Esau who gave away his birthright or bartered it for the "mess of pottage." It may be well enough once in a while to go back to first principles and look to the pages of our past history to shed light on the study of our present bearings. We find there is a grand old document of legendary lore among the archives of Texas history, sometimes mentioned, often ignored. The fathers called it the Constitution. It seems now, however, it belongs to ancient history, a relic of the past. It is still, however, a classic, and was written by master hands. It originated in intellectual power and greatness and was consecrated by earnest patriotism and sacred duty. It was regarded as the

chart of our liberties and basis of the rights of a great liberty loving people, but like its great authors, it is becoming but a reminiscence of departed greatness and patriotism. In that instrument was written a legend to this effect, "All power is inherent in the people." It has been said that "all government was of the people, by the people, and for the people," but rapid progression seems to have changed this into the now prevalent idea that all government is "of commissions and bureaus," "by commissions and bureaus," "for commissions and bureaus"—not for a free people and constitutional government. The citizenship seem to be rapidly losing their creative and controlling power of government and becoming more rapidly *governmental subjects,* and this by assumption of original power by those clothed only with delegated authority. It was Edmund Burke, England's great statesman, but fearless friend of American liberty, who expressed the immortal truth and uttered the prophetic warning that, "This change from an immediate state of procuration and delegation to a course of acting as from original power, is the way in which all the popular magistracies of the world have been perverted from their purposes." Legislative action "acting as from original power" is in direct violation of every principle of constitutional government. The authority of that body is one of delegation, not of original power. It necessarily can not be a body of original authority. It is a created body by the people, exercising only delegated authority as set forth in their Constitution. Assuming to act from original power is usurpation of authority and dangerous, if not fatal, to our liberties and representative government. If this is indulged and sustained in respect to one thing, it would follow necessarily that it may be so in all respects, and in regard to everything pertaining to government. *In that event inherent power would be no longer in the people but assumed by the Legislature.* The majority opinion concede that if there is delegation of power to vitalize the pool hall Act, or being vitalized by the local vote, it suspends the State law, it would be void. It seems to me that it does delegate power, and if exercised, as in the instant case, it would and does suspend all State laws in conflict with it, and of this proposition there ought not to be any doubt. The case is this: The Legislature levied a specified *occupation tax on each pool table* operated in Texas. This authorized a further tax of half the amount of the State by the county and city for county and municipal purposes. *Prior to and at the time of the passage of the pool hall local option law this tax law was in full operation, and revenues collected from the owners of the tables, and the operation of this law extended throughout the entire confines of Texas.* Now there could be no question that the pool hall law was operative and in full existence, and is yet, unless the local option law sets it aside in some given territory. Subsequent to this enactment of the tax law, the pool hall law was passed. *It is not and can not be operative until voted on by the people in a given community.* Now, when this law is voted into existence in the given community, the question is, what *effect does it have upon the existing tax law?* That the tax law is in full operation will

not be questioned before the pool hall law is vitalized. Can it be questioned that the moment a pool hall local option law goes into effect in that community, that Texas no longer can collect in such territory the specified tax levied on pool tables? *That it can not be collected after that event is not a subject of doubt or debate.* So, then, under the reasoning of the majority opinion we have two laws operative in the same territory at the same time. One levies a tax and the other prohibits it, but my associates hold one does not suspend the other, and that there has been no delegation of authority to do so. *The fact is that the pool hall law, if a law at all and authorized, would and does suspend the operation of the tax law.* Expressly recognizing this, the Legislature at its last session passed an Act, on page 129 of printed laws of that body, requiring the refunding to the owners of pool halls in such local option territory the unexpended balance of their occupation tax, and this by reason of the fact, and for that reason only, that the pool hall law had put them out of business, and had suspended the tax law. The Legislature understood not only that they could not collect any further tax in the territory, but it was an act of injustice to the parties who had already paid their tax to such an extent they required the refunding of the money. The tax can not be demanded nor collected in local option pool hall districts any longer, if my brethren are right that the pool hall law is operative. If this is not a suspension of the tax law, it would be more than a difficult proposition to understand the operation of that law. My brethren may hold that both are operative and not in conflict, but it would be a very serious proposition to convince the operator of the pool hall that he could run his pool hall after this local option law had been put into operation. In fact, he would have a very convincing argument, absolutely demonstrated, that the majority were wrong, where, upon his disobedience of the pool hall law, he finds himself locked behind prison bars for such disobedience. I would congratulate my brethren, however, with having by this holding accomplished the very peculiar feat, towit: having two bodies occupying the same space at the same time, which are in direct conflict with each other. This matter has been the subject of many decisions, and all one way in Texas until the recent cases by my brethren. All decisions, so far as I know, have held that where an authorized local option law has been put into operation, it repealed or suspended all laws and parts of laws in conflict with it within the limits of the territory where the local option law is made operative. Robertson v. State, 5 Texas Crim. App., 155; Boone v. State, 12 Texas Crim. App., 184; Donaldson v. State, 15 Texas Crim. App., 25; Ex parte Lynn, 19 Texas Crim. App., 293; Ex parte Vaccarezza, 52 Texas Crim. Rep., 116; Williams v. Davisson, 70 S. W. Rep., 989. These are a sufficient number of cases without further citation. If the pool hall Act is constitutional its operation in the given territory would not be repealable by the Legislature, and could only be vacated by the action of the voters of the given territory; and, as before shown, it occurs to me, as to that territory, it would operate as an amendment to the Constitution because of its inviolability

of being set aside except by a vote of the people. Judge Harper says that by reason of the decisions which he cites from other States, that now the Legislature can pass such laws and they will be held constitutional.[1] If this is true, and the Legislature could so do, it may be seriously asked why our Constitution included local option provisions for local option laws, limiting the Legislature to specified subjects. If the full power already existed in the Legislature independent of these provisions, why specially so ordain, and why place the limitations, and why reserve the power to the people themselves? If they are correct, the people had already delegated such power to the legislative body and such provisions are more than useless,—worse than foolishness. These constitutional provisions expressly recognize the want of power in the Legislature to enact such laws. They are inhibitions against the enactment of such laws. These can only be enacted as specified in the organic law.

It is further to be stated that local option provisions in the Constitution expressly recognize and endorse the doctrine enunciated in the Swisher case, supra; therefore, such local option laws as were desired were placed in the Constitution. Thus far only was the doctrine of the Swisher case impugned but such provisions emphasized the doctrine of that case. It was otherwise fully and completely upheld and endorsed by the Constitution. If the inherent power of the people can not prescribe a constitution of controlling influence and command over its agencies and place limitations on such agencies, such inherent power becomes a mockery. The agent would become superior to the principal; the creature to the creator; the Legislature over the Constitution. Inhering in the majority opinion is to be found another dangerous proposition of recent growth and late development in this State, towit: that everything can be done by legislative authority with a view to the interests of society.

A great writer and student of American representative form of government, with full knowledge of the underlying principles of individual liberty and citizenship, as constitutionally promulgated, has said that such a proposition is "an impious adage, which seems to have been invented in an age of freedom to shelter all the tyrants of future ages." This means, if the majority opinion is correct, that our Constitution, Bill of Rights and reserved and sacred guarantees of life, liberty and property can be brushed aside by legislative caprice and overturned by assuming original but unauthorized power. It means the abolition of representative government. It means that these reserved rights to our people shall no longer be respected, if it is thought the interests of society is involved. Under that view the citizen no longer controls his government, but the Legislature becomes supreme, and autocratic. The far-reaching consequences of the majority opinion, if it is to become the law in this State, may not be readily seen at first blush. If it is to be hereafter regarded as the law it is evident, first, that the Legislature will be superior to the Constitution, and omnipotent in all legislative matters despite the obligatory checks placed in the Constitution; second,

that local option is to be that rule of omnipotence, whether constitutional or not, for future government; third, paternalism to become the fixed rule with oppression the result; fourth, to reach that end socialistic theories are to be a controlling rule, and, fifth, the Constitution is to be no longer the rule in government. If the State law authorizes pool hall elections to suspend the tax laws, then why may not the same body authorize a suspension of all laws by the same means and by the same process? Would it not be, if they are correct, that the Sunday laws may be thus set aside by vote of a given territory. If not, why not? Why should not laws against bawdy houses, adultery, fornication, rape, seduction and incest be suspended by the same local option process? Is not the principle the same? If the popular idea can suspend this tax law by such election, it is certainly very far reaching in its destructive results upon our entire system of government.

There is another matter that I feel that I should mention; that is, the remarks or criticism of my brethren of the Supreme Court as manifested in their opinion in the instant case. They criticise that august tribunal for their recent opinion in Ex parte Mitchell. That the Court of Criminal Appeals and the Supreme Court may differ on any legal matter as to what the law may or ought to be may here be conceded. The Supreme Court is a court of last resort in final determination of questions of civil law. To decide such questions is an imperative duty and compulsory in its nature and its command. There may occasionally arise a matter where the line of demarcation as to jurisdiction may present itself on closely drawn lines, but this does not often occur nor does it for that reason authorize assumption of superiority over the Supreme Court. This is well understood by the courts as well as the bar and bench of the State. This court has recognized this in two recently decided cases, Ex parte Zacarro, the opinion by Presiding Judge Prendergast, 72 Texas Crim. Rep., 214, and Ex parte Mussett, 72 Texas Crim. Rep., 287, opinion by Judge Harper. The opinions in these two cases were carefully and advisedly written. The same question was involved in both of those cases that was involved in the Mitchell case. The Court of Criminal Appeals, reviewing this matter, dismissed the applications in those cases from the docket of this court and remanded to custody the applicants on the ground expressly stated, that they were civil cases, and the Court of Criminal Appeals was without jurisdiction to entertain or try such cases. I might quote from the decisions but they are easily accessible to the profession, and I will not encumber this dissent with such quotation. In the Zaccaro and Mussett cases the applicants had been fined for contempt for the disobedience of an injunction of the District Court of Tarrant County. This court granted writs in each case, heard arguments and took submission. Upon consultation my brethren decided, and so wrote, that they were civil cases, and dismissed them from our docket, and remanded the parties to custody without prejudice. I believed that this court had jurisdiction, and so wrote, but fully conceded that the Supreme Court had juris-

diction. I agreed fully that that court had full authority to try the cases, and to this view I still adhere. Appellants then resorted to writ of habeas corpus before the Supreme Court, and upon final hearing were discharged from custody by that court, as they ought to have been. In the Ex parte Mitchell case the facts showed Mitchell was enjoined by the District Court of McLennan County, and disobeying the injunction he was fined, and following the decisions of this court in the Zaccaro and Mussett cases applied to the Supreme Court, evidently believing this court was correct in those cases, or at least that they would act in his case as in those cases, because it was only a civil case. The Supreme Court granted the writ and discharged the applicant upon final hearing, holding the pool hall law invalid.

The statement that the Supreme Court alone had jurisdiction because it was a civil matter is sustained by the opinions of Presiding Judge Prendergast and Judge Harper in the Zaccaro and Mussett cases. Viewing these three cases in the light of what has been written by the Court of Criminal Appeals, it seems to me that this court has gotten itself in the attitude of deciding the question both ways, and within a very short period of time without even noticing the two prior decisions. If the Supreme Court only had jurisdiction to try an infraction of an injunction, they had the right to determine necessary questions involved, as a matter of fact and as matter of law. The only question involved in the Mitchell case, as in the other two cases, was disobedience of an injunction wherein all the parties had been enjoined for violating what my brethren have held to be statutes punishing criminally. If the Supreme Court had jurisdiction in the two cases first mentioned, it would follow, as night the day, that they had jurisdiction in the latter, and if the contempt was void for the stated reason in the Mitchell case, it was so in the other cases. If one was a civil case, they were all civil cases, and having acquired jurisdiction, that court had not only the right to determine the validity of the law under which applicant was held, but it was a duty. If they were criminal cases, the Supreme Court was without jurisdiction, and my brethren were wrong in their decision of the Zaccaro and Mussett cases.

I do not care to follow this question any further. I can not agree with my brethren in their proposition that the local option pool hall law is constitutional. I have written beyond my original purpose, and I feel that the opinion is so far-reachingly wrong that I ought to at least enter my protest, and for this reason have written. I might have cited many cases from other States to the effect that the Legislature can not authorize a referendum election on general State laws. This ought to be regarded as self-evident, and further, it is only when the Constitution authorizes such procedure that such local option elections can be justified or held. This is at least true in Texas, by the Constitution and the entire jurisprudence of the State. Our State has a well marked and fully developed line of jurisprudence and law on this question, and it is based on the Constitution of the State, and where the Constitution speaks the legislative body as well as the courts and execu-

tive departments must obey. Texas will be controlled by her own Constitution, her own laws and her own jurisprudence, and will not subvert or overturn our jurisprudence and law—organic and settled— because some court in some other State has written contrary to what is our settled jurisprudence. We have not adopted initiative and refer- endum in Texas as part of our Constitution. The decisions of other States where they have such procedure does not obtain here, nor will the decisions of other States engraft upon Texas such doctrine as in- itiative and referendum. It can only be done by majority vote of the people of Texas placing it in their Constitution.

For reasons given I respectfully enter my dissent.